## THE STATE v. CELESTIN LEONARD et al.

Where several persons are indicted with the principal offender, as his aiders and abettors, whether there shall be a severance in their trial, with the view of using the testimony of those that may be acquitted, either for the State or the prisoner, is a matter resting in the discretion of the court. When such motions are made, it should appear that there was no evidence against the persons in whose behalf the severance was asked.

A threat made by the deceased within a month before the homicide was committed upon him, and which threat is not shown to have been communicated to the accused, or to have been followed up by any act denoting an intention to execute said threat, will not be sufficient .o reduce the killing from murder to manslaughter.

APPEAL from the First District Court of New Orleans, *Larue,* J.  *Isaac Johnson,* Attorney General, for the State, contended: *Celestin Leonard* was indicted. in the First District Court of New Orleans, of the crime of murder, and convicted, without capital punishment. Three others were indicted with him, as aiders and abettors, but were acquitted. *Leonard* has appealed, and relies on two grounds for a reversal of the judgment against him, and for a new trial.

The first ground is to the ruling of the court, refusing to permit one *Secrétan* to be sworn as a witness for the defence, to prove expressions of malice by the accused towards the defendant.

The testimony was irrelevant. It appears from the bill of exceptions, that the expressions of malice sought to be proved were made in the parish prison a month previous to the homicide; and that the killing took place on the 26th of August, 1850; and that on that day the accused sought, pursued and killed the deceased. The evidence, therefore, if admitted, could have no tendency to reduce the offence to manslaughter, nor to show an excusable homicide.

The rule is, that words of menace of bodily harm do not constitute a sufficient provocation to reduce a homicide from murder to manslaughter, unless such words are, at least, accompanied by some act denoting an immediate intention of following them up by an actual assault. 1 Russel, 580. 1 East. P. C. c. 5, § 29, p. 233. Wharton, 226. 4 Iridell, 409. In all cases, to reduce a homicide, upon provocation, to manslaughter, it is essential that the beating or wounding appear to have been inflicted immediately upon the provocation being given. Arch. 325. Foster, 296.

And this is strictly in consonance with right reason, and general principles. Voluntary manslaughter occurs when upon a sudden quarrel two persons fight and one of them kills the other, or when a man greatly provokes another by some personal violence, and the other immediately kills him. *Lord Morely's case,* in 1 Hale, 456, is not law, except, perhaps, as explained by Russel; and the defendant can take nothing by this plea.

2d. Defendant's counsel demanded a severance, on the trial of the case, and requested the judge to allow the jury to consider the case of the three persons indicted as aiders and abettors, to make witnesses of them, in the event of their acquittal, in behalf of *Leonard,* which was refused. The judge was right. It was a matter of discretion with the court to grant or refuse the request, and not

a right, demandable by the defendant. Roscoe's Criminal Evidence, 142. "It has been adjudged, that such of the defendants, in an information against whom no evidence has been given, may be witnesses for the others. The practice in this case is, to apply to the court to permit the issue as to the intended witnesses to go immediately before the jury." Is even this imperative on the court in such a case? Phillips, vol. 1, quoted by defendant's counsel, at p. 67, says, " if there is no evidence against one of the defendants, he is entitled to a separate verdict of acquittal, and may then be called as witness for the others." At page 30, however, the same author says: "When there is either no evidence whatever, or very slight evidence against one of them, the court, in the exercise of its discretion, sometimes will direct a verdict to be given for him, and if acquitted admit him as a witness for the others.

In the case of the *United States* v. *Gribert et al.*, reported in 2d Sumner, it was decided, that, in a legal point of view, the reason assigned for a separate trial, which was to make witnesses of the acquitted defendants for the others, was inadequate to justify the court in the exercise of such a discretion.—p. 66, 67. Judge Story further declares: " that he has never known a case in which the sole ground for a separate trial has been to make the witnesses competent for each other." Upon full consideration, the same doctrine is held in 12 Wheaton's R. 480. See also Wharton, 666, 667, and the authorities there referred to.

The motion for a separate verdict is not upon the ground that there was no evidence against the parties sought to be made witnesses of; and a case of error could, only on that hypothesis, if it even then could, be made out against the judge for refusing the severance. The fact that the motion for a separate verdict was predicated on the ground of no evidence, must appear from the bill of exceptions as approved by the judge, and cannot result inferentially from the verdict of acquittal by the jury; otherwise, there would be no sense in the doctrine sanctioning the practice of permitting a separate verdict in cases where there was no evidence against some, in order, if acquitted, that they might become witnesses for the others.

*C. Dufour*, for the appellant, contended: *Celestin Leonard* and three others, defendants, were indicted for murder. *Leonard* was found guilty, without capital punishment, and all the others were acquitted.

The errors assigned for this appeal are embodied in two bills of exception. 1st. After the evidence of the State was closed, the counsel for the prisoners moved that the issue against all the defendants, except *Leonard*, be sent up immediately to the jury, in order that they might be heard as witnesses for *Leonard*, in case of acquittal.

This was denied by the court, and a bill of exception taken. This decision was against universal practice, and is destructive of the enlightened tenderness of the law. See 1 Phillip's Evidence, 62. Roscoe's Criminal Evidence, 118. McNally's Evidence, 56. 1 Chitty's Criminal Law, 627.

The doctrine in Chitty reads as follows, viz: " When several defendants are indicted together, one of them cannot regularly become a witness for the others; but if no evidence whatever be given against him, he is entitled to his discharge as soon as the case of the prosecution is closed; and may then be examined on behalf of the other defendants." The case cited in McNally is a leading one on the subject.

2d. The counsel for the defendants offered a witness named *Secrétan*, to prove that the deceased had told him a very short time previous, whilst both the deceased and witness were in jail, that as soon as he would be free he would kill *Celestin Leonard*. This evidence the court would not allow to be exhibited to the jury, and a bill of exceptions was taken.

It is always improper and against the humane policy the of law, in a case of life and liberty, to shut out evidence which may attenuate the charge. The effect of evidence, in criminal matters, is with the jury, and should not be anticipated by the court; and still less can the court exclude evidence because it is assumed it will have no effect.

In the present case, it was confidently expected by counsel, that the testimony of *Secrétan*, showing words of menace of bodily harm, would have made the offence manslaughter only. The doctrine is, that words of menace of bodily harm are a sufficient provocation to reduce the offence of killing to manslaughter. See 1 Russel on Crimes, 701. *Lord Moreley's case*, 1 Hale, 456.

STATE
v.
LEONARD.

A man may certainly run mad from fear; and such a case may exhibit the frenzy, the *furor brevis*, which renders man deaf to the voice of reason, and makes him a fit subject for the indulgence shown by the law to human frailty.

The judgment of the court was pronounced by

PRESTON, J.   The defendant having been indicted and convicted of the crime of murder, and sentenced to the penitentiary for life, has appealed.   Three other individuals were charged in the same indictment, as his aiders and abettors. After the evidence for the State was closed, the defendant's counsel moved the court, that the case of these individuals should be first submitted to the jury, that in case of their acquittal, he might have the benefit of their testimony in his behalf.   The district court overruled the motion, and the prisoner's counsel took a bill of exceptions and appealed.

It was settled in the case of *The King* v. *Frazer and Ross*, that "In criminal prosecutions, where there are several defendants on trial, and it appears, on closing the evidence on the part of the prosecution, that against one or more of them no evidence has been given, the court will, in its discretion, direct an issue to go up to the jury, on the part of the defendant or defendants against whom no evidence had appeared; and on verdict of not guilty being recorded, will suffer such defendant or defendants so acquitted, to give evidence on the part of the prisoner or prisoners remaining at the bar on trial."   1 McNally, 56.

But it seems to be equally well settled, that if there be any testimony against all the persons accused, a separate verdict will not be allowed; but the jury should pass upon the case, as to all the prisoners together.   Whart. Crim. Law, 667. Bul., *Nisi Prius*, 285.   *Commonwealth* v. *Marson*, 2 Ashmead, 32.

It is not shown by the bill of exceptions, that there was no testimony in this case against the persons accused as aiders and abettors, and therefore we are unable to say, that the district court did not wisely exercise the discretion confided to it by law.   That it was a matter in the discretion of the court, we infer not only from the case cited from McNally, but from the case of *The United States* v. *Marchand*, in which the Supreme Court held, that the allowance of a separate trial of persons jointly accused, was not a matter of right, but of sound discretion to be exercised by the court.   12 Wheat. 480.   The same principle must apply to separate verdicts.

The defendant offered to prove that within a month previous to the homicide of which he was accused, the deceased had, while in the parish prison, declared to a fellow-prisoner that he would kill the defendant.   The object of the evidence was to alleviate his offence into manslaughter or excusable homicide.

Foster informs us, that in every case of homicide upon provocation, how great soever it be, if there is sufficient time for passion to subside and for reason to interpose, such homicide will be murder.—p. 296.   The time that intervened between the utterance of the words and the perpetration of the homicide, forbid the idea that the offence might be reduced to manslaughter on account of the menaces.   For even if the defendant heard of them, which does not appear by the bill of exceptions, and was excited to such a degree at the moment, as to have alleviated an immediate homicide into manslaughter, yet there was sufficient time for his passion to cool and reason to resume her sway.

Besides, East, in commenting upon *Lord Morley's case*, relied upon by the counsel of the accused, concludes, that "menaces of bodily harm, to be a sufficient provocation to reduce the offence of killing to manslaughter, should at least be accompanied by some act denoting an immediate intention of following them up by an actual assault."   1 East, 233.

Nothing of the kind is pretended in the bill of exceptions. On the contrary, it is stated that "the accused sought, pursued and killed the deceased."

We know of no case in which it has been held that menaces without dangerous action will excuse a homicide. Blackstone, on the contrary, informs us, that " no affront by words or gestures only, is a sufficient provocation, so as to excuse or extenuate such acts of violence as manifestly endanger the life of another." Vol. 4, p. 200.

The judgment of the district court is therefore affirmed, with costs.