## The State of Louisiana v. Cazeau & Blanchard.

|   |   |
|---|---|
| 8 | 109 |
| 44 | 324 |
| 8 | 109 |
| 46 | 628 |
| 8 | 109 |
| 52 | 576 |
| 52 | 623 |
| 8 | 109 |
| 110 | 726 |
| 111 | 336 |
| 8 | 109 |
| 119 | 52 |

There is no objection to the insertion of several offences of the same nature in an indictment in separate counts, though differing from each other in degree and punishment, when these offences are all felonies.

The right to compel the prosecutor to elect on which charge he will proceed, is confined to cases where the indictment contains charges which are actually distinct, and which grow out of different transactions.

The term felony means a crime of great magnitude, and subject to an infamous punishment—death, or imprisonment at hard labor.

In an indictment against several, where the offence is such that it may have been committed by several—they are not of right entitled to be tried separately—but are to be tried in that manner only when the Court on sufficient cause, may think proper.

The Supreme Court cannot review, in criminal cases, the acts of a Judge of the first instance, resting in his discretion.

In an indictment against several, each defendant is entitled to his peremptory challenge. This is not a right to select, but a right to reject—and no one defendant can complain that jurors not challenged by him, have been challenged by a co-defendant.

The improper reception of parol evidence offered by the State, of the contents of a policy of insurance, is cured by the subsequent introduction of the policy by the defendant.

It is a general rule that whenever the credit of a witness is to be impeached by proof of anything that he has said, declared, or done in relation to the cause, he is first to be asked, upon cross-examination, whether he has said, declared, or done that which is intended to be proved, in order that he may have an opportunity of explaining that which is *prima facie* contradictory.

The title of an Act cannot control the plain meaning of the words in the body of the Statute.

APPEAL from the First District Court of New Orleans, *Larue*, J. *Soulé & Barton*, for appellant.

The Indictment contains two counts:

*1st Count:*—For preparing combustibles for setting the building on fire:

*2d Count:*—For actually setting fire to and burning that building:

In both counts that building is described as being "occupied as a mansion house by the said *Pierre Cazeau*."

### ASSIGNMENTS OF ERROR WITH COMMENTS THEREON.

*1st Error.*—The refusal of the District Judge, either to require the District Attorney to make his election upon which of the two counts the defendant *Cazeau* should be tried, on account of the misjoinder and duplicity of counts, or to quash the whole indictment therefor.

*Acts of 28, p. 38.*—The 1st section of the Act of February 21, 1828, (under which this indictment was framed,) punishes the *malicious* setting fire to a mansion house, &c., with *death.*

The 2d section of that act punishes the preparing and placing combustibles, with *intent* to set fire to such mansion house, &c., *with imprisonment at hard labor for a term of between 10 and 15 years.*

There are but two classes of crimes at Common Law, which fall within the definition of *felonies*; they are,

1st. All such as are punished *capitally;* or

2d. All which involve "*a forfeiture of lands and goods,*" &c. All other offences at Common Law are *misdemeanors* only.

Now in Louisiana we have no criminal offences punished by "a forfeiture of lands and goods," and consequently we have no crimes deemed *felonies* at Common Law, except such as are punished by *death.*

It follows, that this indictment charges a *misdemeanor* in the first count, and a *felony* in the second; and the question raised by the rules referred to is, can they be joined?

Avoiding details, we think the negative of this proposition is irrefutably maintained in the references and quotations we now cite:

*Arch. Crim. Proceedings, p.* 60.—"A defendant ought not to be charged with different *felonies* in different counts; as for instance, *murder* in one count, and a *burglary* in the other; or a burglary in the house of A. in one count, and a distinct burglary in the house of B. in another," &c.

STATE OF LA.        *Ibid* 61.—" So upon an indictment for robbery, and for an assault *with an*
CAZEAU & BLAN-  *intent, &c.,* in *different* counts, the prosecutor must *elect* upon which he will
CHARD.          proceed."

If then distinct felonies cannot be joined in distinct counts, it must be inferred
*a fortiori,* that felonies and misdemeanors cannot be joined.

The junction of even mere *misdemeanors* in the same indictment, is specially
restricted to the contingency, that each of them demand the same judgment.

3 *Term Rep.* 98, 106, 466.  3*d Maule & Selwyn* 539.  8*th East* 46.  2 *Burr.*
984.  2*d Campbell* 131.—" Indictments for misdemeanors may contain several
counts for different offences, PROVIDED THE JUDGMENT UPON EACH BE THE SAME."

It is seen above, that a count for robbery could not be joined with a count for
an assault with *an intent to rob, &c.;* and nothing can be surer in criminal
pleadings, than that a count for *murder* may not be joined with one for an *assault
with an intent to kill;* and why?

Simply for this:—That when the *whole* offence aimed at, has been *actually
committed,* the *intent to commit it,* is thoroughly merged and absorbed in its
actual accomplishment, and constitutes therefore, not only a main element of the
principal charge, but of the punishment allotted to it.

In the case at bar, the 2d count charged that *Cazeau's* house was *actually set
fire to and burnt,* and the verdict responsive to this charge, and convicting him
of the fact,—*officially* informs this Court that the house was thus *set fire to and
burnt.*

If *Cazeau* procured and placed the combustibles, &c., and was present at the
burning, that made him a *principal* to the arson; and if he procured and placed
them, but was not present at the burning, that made him an *accessory before the
fact;* and as the Act of March 18, 1818, subjects all accessories of this class to
the same penalties denounced against the principals, in neither conjuncture
could he have been prosecuted for the *misdemeanor,* when the proofs, if reliable
at all, must have merged the *misdemeanor* in the *felony,* and have convicted him
of that.

There is an English case most strikingly applicable on this point:

2d.    *East Cr. Law* 1031, *Isaac's case.*  John Isaacs was indicted for a *misde-
meanor at Common Law,* in setting fire to and burning *the house he himself oc-
cupied, &c.,* and it being admitted, that several other persons houses adjoining
were also burnt, Mr. Justice *Buller* said:

" If other persons houses were in fact burnt, although the defendant might
only have set fire to his own, yet, under these circumstances, the prisoner was
guilty, IF AT ALL, of *felony,* the MISDEMEANOR BEING MERGED; and he could not
be convicted on this indictment, and therefore directed an acquittal."

This decision was made in 1799, and of course before the 43d George III.
(1803,) which being specially designed for the protection of *Insurance Offices,*
made the burning one's own house, a *felony.*

The absurdity of such a junction of counts, was strikingly exemplified in the
finding of the jury against the defendant *Blanchard.*  The only direct proof of
his agency, was that he brought the combustible matters to *Cazeau's* house, and
was present and concurring when they were placed and set on fire.  If the jury
believed the witness, (who was *Hervais,* and acknowledged himself an *accom-
plice,*) then they should have convicted him as a *principal* in the arson; and if
they disbelieved him, they should have acquitted him altogether.  This latter
alternative they would doubtless have agreed on, had they not found a safety-
valve in the first count, to let off and compromise their scruples and differences
touching *Blanchard's* guilt or innocence under the second count.

2d *Error.*  The Court's refusal to sever *P. Cazeau* from his co-defendants, and
award him a separate trial, on the grounds set forth.  He charges his co-defend-
ants with a conspiracy to take his life, under the forms of law, for a crime of
which they alone are guilty; and with a purpose (as one of the means thereof)
of depriving *Cazeau* of his right to " an impartial jury of the vicinage," by ma-
liciously challenging such jurors as he should accept, and as capriciously accept-
ing such as he (*Cazeau*) should peremptorily challenge.

In most joint prosecutions, as experience attests, no motives exist for severing
the trials of co-defendants; and their interests being joint and mutual, no serious
difficulties could arise in selecting a jury acceptable to all.

But if their interests conflict, or (what amounts to the same) if the parties
think that they do, and they cannot or will not agree in the selection of jurors,
what is to be done?

If co-defendants in a *criminal* prosecution must agree in their peremptory challenges, or lose their right to them, as in *civil* cases, nothing could be easier than to impannel a jury for their trial.

But if *each* citizen has a *right* under the Law and the Constitution to challenge peremptorily twelve of the jury, and an equal right to be tried by such of the jurors upon the list whom the State has not challenged either peremptorily or for cause, then, in the conjuncture just stated, a joint trial is plainly impossible, and the State must sever or not try at all.

But this matter may be more appropriately noticed under the next head:

3d *Error.* The Court's refusal to direct or permit the several jurors to be sworn and impannelled, as set forth in detail in Bill of Exceptions, B.

This paper explicitly shows in detail that no less than twelve jurors, (not one of whom had been challenged by the State, either peremptorily or for cause, and each of whom had been accepted by *Pierre Cazeau,*) were excluded from the pannel by the Court, against his consent, and for the reason that they were peremptorily challenged by his co-defendants *Blanchard* and *Blanc.*

From the same paper it appears, that of these twelve jurors, *Blanchard* challenged five, and *Blanc* seven.

*Record p.* 15.—Now it appears of Record, that *Blanc* and *Hervais* were discharged from the prosecution at an early stage of the trial, and made witnesses of in behalf of the State, so that the State had the benefit of the seven peremptory challenges of *Blanc,* in addition to its own; and of course *Cazeau* was to that extent prejudiced in making choice of his jury.

Nor was that the worst of it; for as *Blanc* was discharged before the State's testimony was closed, of course his discharge was not the result of any exculpatory testimony of his own, and as we must suppose, that the Attorney for the State was fully aware, of all the proofs he could adduce in the State's behalf, it is a fair inference that the discharge of *Blanc* was a foregone conclusion of the District Attorney before the impanelling of the jury commenced; and if so, must *ab initio* have known that *Blanc* could have no just right whatever to intermeddle with, or to thwart *Cazeau* or *Blanchard* in their efforts or their rights to obtain a jury of their choice.

However this may have been in the case at bar, nothing can be surer than that the State, if armed by the judgment of this Court with the power of linking and holding in the same prosecution and trial, persons hostile and hateful to each other, must reap undue and extraordinary advantages, through their clashings and collisions, in their choice of a jury for their joint trial.

At all events, it is patent upon the record in the case at bar, that *Cazeau* stood in an attitude of distrust and hostility to his co-defendants, and that through their peremptory challenges, added to those of the State, the *prosecution* had an advantage against him, in the choice of a jury of eighteen peremptory challenges, against his twelve, though the Statute restricts the State to six!

A very serious objection to this consolidation of persons in the same trial, where they stand in militant relations to one another, may be exemplified in the delicate and embarrassing attitude in which the respective counsel of the militant co-defendants may be placed.

There are members of the bar (and *Cazeau's* counsel are of them,) who could not be induced by any recompense to prosecute, as private counsel, a citizen upon a charge involving his life.

Now, it was past a doubt that *Cazeau's* house had been actually burnt, and that it had been willfully done by somebody, and as his co-defendants had acknowledged before the Recorder, their agency in the doing of it, it became the very gist of his defence to maintain his own innocence, by devolving the guilt on them. To do this effectually, might require his counsel to join the State in prosecuting his co-defendants for their lives. To do it ineffectually, might subject them to the reproach of doing less than their duty towards their client.

It is not complained of at all, that the District Judge allowed to *each* of the prisoners, his right of peremptory challenge within the limits prescribed by law. These are means provided by law, to secure that "impartial jury" which the Constitution guarantees to every citizen charged with a crime, &c.

But the right of peremptory *challenge* is not more invaluable to the citizen, or more essential to the securing of that "impartial jury," than the right to be tried by such jurors as he *accepts,* after the State has waived or exausted its rights of challenge.

Neither the Constitution nor the laws countenance any limit or qualification

STATE OF LA.
v.
CAZEAU & BLAN-
CHARD.

to each citizen's right to be tried by the jurors of his choice, except so far as the State's right of challenge peremptorily, or for cause may interfere therewith. Beyond this, the right of acceptance is as peremptory, as absolute, and as exclusive as the right of challenge itself. Neither the Court, and still less an imputed accomplice, can deprive him of jurors which the State has spared to his choice, and the Constitution and laws have allowed him. If this right of acceptance interferes with a co-defendant's right of challenge, and neither will give way, that only proves that they cannot be rightfully and lawfully prosecuted together, and that the trials must be severed. This is all, but that is indispensible, if each is to be secured in their constitutional and legal rights respectively.

*4th Error.* The Court's receiving, and refusal to exclude from the jury the testimony of *J. M. Lapeyre,* (the President of the N. O. Insurance Company, a witness in behalf of the State,) to prove that *Cazeau* had insured the property, together with the *contents* of the policy of insurance, without the production of the original, or a duplicate, or an authentic copy thereof.

The objections taken to this testimony were:

1st. That as the indictment charged no intent to defraud the Insurance Company, the proof was wholly irrelevant to the issue under trial; and if it had been relevant,

2dly. It was but secondary and inferior proof, until the absence of the policy and the official books of the Company had been satisfactorily explained and accounted for.

The principles of law trenched upon in this ruling of the District Court, are too familiar and incontestible to need a special reference to authourities, and we shall cite none.

True, the Judge *a quo* assigns two reasons for this decision, at the foot of the Bill of Exceptions.

The 1st. is: That the testimony was admitted to prove "the malice or ill design of the party, &c."

The reply to this is, that it is no answer at all to the objection *that the* defrauding the Insurance Company was not charged in the indictment, nor therefore in issue; and if it were, it is no answer at all to the other objection, that it was but secondary testimony.

The 2d. point is, that the policies were *afterwards* introduced by the parties, &c.

The obvious reply to this is, that it is no answer to our objection at all, inasmuch as it is altogether *ex post facto,* a mere after thought, in assigning a reason for making a decision, which had no existence whatever at the time that decision was made. We are constrained to add, that we protested at the time, as we protest now, to the foisting into the *record* by the arbitrium of the District Court, a mere fact, which, under the limited jurisdiction of this Hon. Court in criminal causes, was a matter wholly *in pais,* unless brought into the record by a Bill of Exceptions.

*5th Error.* The Court's refusal to admit in evidence the duly authenticated original of the affidavits and testimony taken before the Recorder, of such of the witnesses as had been examined on this trial, together with that of the co-defendant *Blanchard,* as set forth in the Bill of Exceptions, D.

The objects stated for offering these proofs were:

1st. To contradict and discredit such of the witnesses whose testimony had been taken both before the Recorder, and on the trial of the cause, through the discrepancies manifest upon a comparison between them.

2d. To establish through the same proofs, (in connection with that of *Blanchard,*) the existence and character of that conspiracy against *Cazeau,* which had been charged in the rule taken, and the affidavit theretofore made by him.

We think we need cite no authority upon this point.

REFERENCES:

1st Mor. Digt. 362.—As to the Louisiana law of Arson, see Act of May 4th, 1805, sections 3, 6, 33, 48, and Kerr's Exposition.

*Ibid.* 384.—Act of February 22, 1817, sections 4 and 5.

*Ibid.* 388.—Act of March 12, 1818, sections 8, 9 and 12.

Acts of 1828, p. 38.—Act of February 21, 1828, sections 1 and 2.

Acts of 1829, p. 164.—Act of 1829, section 1.

#### DEFINITION OF ARSON AT COMMON LAW.

4th Black. 220; 3d Chit. Crim. Law, 530, 32, 33; 2d Russ. 422, 25, 32, 4; 2d East Cr. Law, 1014, 15, 22, 3, 5, 6, 81.

Indictments at Common Law and under statute for Arson: 3 Chit. Crim. Law, 535, 6, 7, 8, 9 and 340, 1—*Ib.* 463.

As to date of Common Law, see 2d Black. Com., p. 31.

As to the definition of Felonies, see 4 Black. Com., 94 to 96.

*Johnson,* Attorney General.

*Error* 1.—There is no law to support this assignment. The preparing combustible materials, and the setting fire, are parts of the same act. The former is included in the latter. A man may be found guilty of manslaughter who is indicted for murder or for assault and battery, though indicted for an assault with the intent to kill; or for an assault with intent to kill, though indicted for an assault with intent to murder. The punishment in all these cases is different, and ranges from death to simple imprisonment or fine; and if a person can be found guilty, under such indictments, of the lesser offence, it certainly can be no objection to an indictment, that, in different counts, it sets out both. What the jury is authorized to find, cannot be wrong in the prosecution to charge: *State* v. *Stouderman,* 6 An. 286. In the case of *The State* v. *Crosby et al.,* it was held by this Court that a count for larceny may be joined, in the same indictment, with one for receiving stolen goods; and it is good doctrine in England and the United States, that it is no objection to an indictment that several offences of the same nature, though differing from each other in degree, and varying in punishments, are charged in separate counts: 2 Hale, 173; Chitty C. L. 253; Wharton C. L. 106.

This being the case, there was no ground for the motion to quash the indictment for misjoinder and duplicity of counts, and none, consequently, for that to compel the District Attorney to make his election upon which of the two counts *Cazeau* should be tried.

The right of election is confined to cases where the indictment contains charges which are *actually distinct,* and which grow out of different transactions. But when several counts are inserted in an indictment for the purpose of meeting the evidence as it may transpire on the trial, the charges being for offences technically of the same nature and substantially the same, the right of election is never allowed: Wharton, 109. To fortify his position, the able and ingenious counsel for *Cazeau* affirms that, at common law, a joinder of a felony and a misdemeanor, in separate counts of the same indictment, is bad, and then contends that the offence of preparing combustible materials for setting fire to a building, at common law, is a misdemeanor, because not punishable here, or in England, with death. The reason of the English authority was, that in an indictment charging a felony and a misdemeanor, the defendant would be deprived of a copy of the indictment, a special jury, &c. This reason has no force in this country. And in the States it has been generally held that felonies and misdemeanors may be properly joined when relating to the same subject matter: Wharton, 108, and authorities cited. But, preparing combustibles to set fire to a building is punishable with imprisonment at hard labor in the penitentiary, and it has been decided that the term, felony, has no precise meaning in this State, the forfeiture of lands and goods which characterized it in England, having been abolished; and that it is understood to denote a crime of great magnitude, and subject to an infamous punishment—death or imprisonment at hard labor: *State* v. *Sartigue,* 6 An. 405.

*Error* 2.—The refusal of the Court to award a separate trial to *Cazeau,* from his co-defendants, was a matter entirely within the discretion of the Judge before whom the case was tried. He did not think a sufficient showing for a severance had been made, and refused it. No matter of law, from which an appeal lay, was involved in his ruling, any more than if it had been an application for a continuance. This Court will not, therefore, revise the decision of the Court of the first instance touching this point. *State* v. *Jackson,* 6 An. 593; *State* v. *Bradley,* 6 Ann. 555.

*Error* 3.—The counsel for the accused seem to labor under a strange hallucination on the subject of the prisoner's rights. They think he has a right to *choose* a jury, when, on the contrary, he has only a right *to challenge.* If the doctrine contended for be true, it would be impossible, in any case admitting of

peremptory challenges, to try two or more persons at the same time. If one challenges a juror, that juror cannot sit in the trial, and if another has the right to insist that the challenged juror *shall* sit, it is evident that no jury could ever be formed. The truth is, if the District Judge erred at all in this matter, it was in the interpretation he gave the law regulating challenges, which allows "the defendant or defendants twelve peremptory challenges." The words of the law are not clear whether, when several are tried together, the *whole or each* shall be entitled to the twelve. But the Judge, contrary to the former practice of the Court, gave to each twelve challenges. The accused certainly cannot, with grace, complain of this act of favoritism. Acts 1837, 49, 1.

*Error 4.*—The testimony of Lasseps was to a fact which, in this case, it was competent to prove by oral testimony ; but, before the bill of exceptions was submitted to the judge, the prisoner himself had proved the same fact by the production of his policy. It can certainly be no ground of reversing the judgment, that the same fact was proved by both parties, and by each in a different way.

DUNBAR, J. The defendants were jointly indicted on two separate counts— one for maliciously preparing combustible matters with intent to set fire to a building, occupied as a mansion house, and the other for maliciously setting fire to and burning the same building.

The jury found *Blanchard* guilty upon the first count, and *Cazeau* on the second, without capital punishment. The District Judge, in conformity with the verdict, sentenced *Cazeau* to hard labor in the State Penitentiary for life, and *Blanchard* to the same punishment for the term of ten years ; from which judgment they have appealed to this Court.

There have been numerous assignments of error made for the defence, which we shall proceed to notice in their order.

*First.* The refusal of the District Judge to quash the indictment, or to require the District Attorney to make his election upon which of the two counts the defendant *Cazeau* should be tried, because of the misjoinder and duplicity of the counts.

This was only a matter of prudence and discretion which rested with the judge to exercise ; for, in point of law, there is no objection to the insertion of several offences of the same nature in an indictment in separate counts, though differing from each other in degree and punishment, when these offences are all felonies. In most of the States it has been held that, even felonies and misdemeanors may be properly joined when relating to the same subject matter. The right to compel the prosecutor to elect on which charge he will proceed, is confined to cases where the indictment contains charges which are actually distinct and which grow out of different transactions. Wharton, Criminal Law, 106, 108, 109 ; 2 Hale, 173 ; Chitty's Criminal Law, 1 vol. 253. Both the offences charged in the indictment are felonies. What we understand by the term felony, is a crime of great magnitude and subject to an infamous punishment—death or imprisonment at hard labor in the Penitentiary. *The State* v. *Paul Lartigue et al*, 6th Ann. 405.

*Second.* The refusal of the District Judge to award a separate trial to *Cazeau* from his co-defendants.

In an indictment against several, when the offence is such that it may have been committed by several, they are not, of right, entitled to be tried separately, but are to be tried in that manner only, when the Court, on sufficient cause, may think proper. It seems that where several defendants, entirely disconnected in the transactions through which they are sought to be convicted, are jointly indicted, it would be sound exercise of discretion to grant them separate trials.

Wharton's Criminal Law, 666. We, however, cannot review, in criminal cases, the acts of a Judge of the first instance, resting in his discretion. *State* v. *Hunt*, 4 Ann. 439.

· *Third.* That the District Judge did not permit *Cazeau* to accept jurors that were peremptorily challenged by the other defendant.

Under the statute of 1837, twelve peremptory challenges are allowed to the defendant or defendants in all criminal prosecutions in this State for any crime or crimes, the punishment of which may be imprisonment at hard labor for a term of twelve months or more.

It is clear that each defendant has his peremptory challenge. The right of peremptory challenge is not of itself a right to select, but a right to reject jurors, and no one defendant can complain of challenges by a co-defendant. 2 Hale's Pleas of the Crown, 268; *United States* v. *Marchant*, 12 Wheaton, 480; Wharton's Criminal Law, 666.

*Fourth.* That the Court received the testimony of the President of the New Orleans Insurance Company, a witness on the part of the State, to prove the contents of a policy of insurance without the production of the original.

It appears from the bill of exceptions, signed by the Judge, that the defendants themselves afterwards introduced the policy itself in evidence, which we think cured any error which might have been committed in the introduction of · parole proof of its contents.

*Fifth.* That the Court refused to admit in evidence the deposition and affidavits of witnesses taken before the recorder or committing magistrate, to contradict and discredit their testimony on the trial before the Court.

This evidence was properly rejected by the Court, upon the ground that the credit of these witnesses could not be thus impeached, because no questions had been asked of them about their depositions or affidavits when on the stand. It is a general rule that whenever the credit of a witness is to be impeached by proof of anything that he has said or declared, or done, in relation to the cause, he is first to be asked, upon cross examination, whether he has said or declared or done, that which is intended to be proved, in order that he may have an opportunity of explaining that which is *prima facie* contradictory. Starkie on Evidence, part 2, p. 146; part 4, p. 1753. Besides this, it is stated in the bill of exceptions by the Judge, that the recorder had not made a full examination of the witnesses before him, but had merely taken down in writing what he conceived to be the substance of their testimony.

*Sixth.* The defendants, after having established by proof that the State House of Louisiana had been destroyed by fire in January or February, 1828, and that the journals of the Senate and House had been wholly lost or destroyed at the same time, offered the Official Gazette, called the Argus, containing the proceedings of the Senate and House of Representatives of Louisiana, for the purpose of showing that the Act of the 21st February, 1828, entitled an Act to amend the Penal laws of this State was, in its inception in the Senate, entitled an Act to amend the Penal laws of this State relative to the punishment of the crime of Arson. The object of introducing this evidence in behalf of the . defendants, was stated to be, for the purpose of showing that the entire and exclusive object of the Act of February 21, 1828, on its introduction and up to the moment that the 3d and 4th sections were added thereto in the House of Representatives, was to change alone the punishment prescribed in the 4th and 5th sections of the Act of February, 1817, entitled "an Act supplementary to

STATE OF LA. *v.* CAZEAU & BLANCHARD. — an Act entitled an Act for the punishment of crimes and misdemeanors," and to leave all else of those sections in full force and effect.

We do not think the Judge erred in the rejection of this testimony.

The Act of 1828 is in these words: " Whenever a free person shall be convicted of having *maliciously* set fire to a mansion house or other building, or to a vessel or other water craft, the person thus convicted, shall suffer death." The title of this Act cannot control the plain words in the body of the statute, and if the Act of the 21st February, 1828, had passed without any change in its original title, the words in the body of the statute are too plain to admit of doubt. In the case of the *United States* v. *Fisher et al*, assignees of *Blight*, 2 Cranch. 358, Chief Justice *Marshall* said: " On the influence which the title ought to have, in construing the enacting clauses, much has been said; and yet it is not easy to discern the point of difference between the opposing counsel in this respect. Neither party contends that the title of an Act can control plain words in the body of the statute; and neither denies that, taken with other parts, it may assist in removing ambiguities. When the intent is plain, nothing is left to construction. Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived; and in such case the title claims a degree of notice, and will have its due share of consideration." In the Act under consideration there is no ambiguity.

*Seventh*. That the Court charged the jury "that when the Court charged specifically as to what the law was, they were bound implicitly thereby, and to receive, construe and to apply the law, as they were instructed by the Court."

We do not consider ourselves called upon in the present case to decide upon this highly important question, as the defendants do not complain of any instructions that were given to the jury by the District Judge upon any questions. of law. If, therefore, the Judge erred on this point, it could not have caused. *any injury* to the defendants. See the case of the *State* v. *Brette*, 6th Ann. 658.

*Eighth*. That the District Judge refused to charge the Jury, that if they believed, from the evidence, that the mansion house, mentioned in the indictment, and the other property, described by the witnesses as having been consumed at the fire, was the *bona fide* and lawful property of *Cazeau* himself, and that he was in the rightful and exclusive possession and occupancy of the same, at the time that the fire took place, and that no house or building of another had been burned or set on fire, or was designed to have been burned or set on fire by the said *Cazeau*—that then, under the laws of Louisiana, he is not liable to conviction upon either count of the indictment.

From the opinion we have just expressed upon the plain words and meaning of the Act of the 21st February, 1828, entitled, an Act to amend the penal laws of this State, we can nave no hesitation in saying that the District Judge did not err in refusing to give the instruction asked for.

Under the Act of the 22d February, 1817, it was provided: That if any person or persons shall willfully and maliciously set fire to, or burn any dwelling house or other building of *another*, the offender or offenders, on conviction, should be sentenced to an imprisonment at hard labor. See Moreau's Digest, 1st vol. p. 384. But the Act of 1828, which we have already quoted, extends the crime of Arson to the *malicious* setting fire to a mansion house, or other building, even if it should be the property of the person who commits the offence, and increases the punishment to death, which is mitigated, however, by a

subsequent law, that permits the jury to bring in a verdict of guilty, without <span style="float:right">State of La.<br>v.<br>Cazeau & Blan-<br>chard.</span> capital punishment, and the Judge to pass sentence of imprisonment for life. We have no doubt about the intention of the Legislature, or the proper construction of this law of 1828.

It is, therefore, ordered and decreed, that the judgments of the District Court against the defendants be affirmed, with costs.