THOMAS VOJTA, Appellant, v. JOHANNA PELIKAN,
Respondent.

15   471
52   350

May 13, 1884.

1. PRACTICE — VERDICT. — That a jury has found contrary to uncontradicted
affirmative evidence may not be sufficient ground for the reversal of a
judgment at law, on appeal.

2. ——JURORS — CHALLENGES. — The court's exercise of its discretion in
refusing to permit the withdrawal of a peremptory challenge after each
party has exhausted his right of challenge will not be reviewed on
appeal.

3. ——The mere fact that a juror is acquainted with the counsel for one party
is no ground of challenge for cause.

4. ——MISCONDUCT OF COUNSEL. — The trial court's refusal to interfere when
counsel in his argument to the jury draws unfair inferences from the
evidence and indulges in rhetorical invective, will not be reviewed on
appeal.

APPEAL from the St. Louis Circuit Court, BARCLAY, J.
*Affirmed.*

O. B. GIVENS, for the appellant: Appellant's attorney
had a right to make a peremptory challenge at any time
before the jury were sworn to try the cause, or he had a
right to change a peremptory challenge from one juror to
another at any time before the jury were sworn. — *Jackson*
v. *Pittsford*, 8 Blackf. 194 ; *Hunter* v. *Parsons*, 22 Mich.
96 ; *Johns* v. *The People*, 25 Mich. 500 ; *Hendrick* v. *The
Commonwealth*, 5 Leigh (Va.), 708. A peremptory chal-
lenge should be allowed to the plaintiff when asked for,
after he has expressed himself satisfied with the jury, and
after the peremptory challenges have been made by the
defendant's attorney. — *Jones* v. *Vanzandt*, 2 McLean,
611 ; *The State* v. *Prichard*, 10 Reporter, 273 ; *The People*
v. *Kohle*, 4 Cal. 199 ; *The People* v. *Jenks*, 24 Cal. 11 ;
*The People* v. *McCarty*, 48 Cal. 557 ; *Lindsley* v. *The
People*, 6 Park. Cr. 233 ; *Drake* v. *The State*, 51 Ala.
30 ; *Abenner* v. *The State*, 9 Fla. 215. The unfair state-

ments of counsel in argument to the jury, and his statements unsupported by the evidence is sufficient ground for a reversal of the judgment. — *Goldman* v. *Wolff*, 6 Mo. App. 490 ; *Tucker* v. *Henniker*, 41 N. H. 317 ; *Lloyd* v. *Railroad Co.*, 53 Mo. 509; Proffat on Jur. Tr., sect. 250.

EDMOND A. B. GARESCHÉ, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This plaintiff, Thomas Vojta (or Voita) preferred a claim in the probate court against the estate of his mother, Johanna Pelikan, deceased, for services alleged to have been rendered at her instance and request, as a bar-tender or manager of a saloon kept by her, from the year 1867 until the date of her death, which occurred in 1881. His claim was allowed in the probate court for $1,460, one-half of the amount claimed. At the time of preferring the claim the plaintiff was administrator of the estate, and the probate court appointed George W. Lubke, Esq., to represent the estate as administrator *pendente lite*. From this decree of the probate court appeals were taken to the circuit court by the administrator *pendente lite*, and by two of the distributees of the estate. The cause was tried anew in the circuit court before a jury, and judgment was rendered for the defendant, and the plaintiff has appealed.

I. We are asked to reverse the judgment on the merits, as being contrary to the evidence. The evidence submitted in support of the claim was that of William Vojta, brother of the claimant, who testified that about fifteen years before, their mother had stated to the claimant, who had attained his majority, in the presence of the witness, that she wished him, the claimant, to take charge of and run her saloon for her, and that she would give him everything she had at her death, if he would take charge of it and run it, and remain with her until that time ; that the claimant agreed to do so, and went to work for her soon after; that he remained with her and worked for her until she died, which was about

April, 1881; that she died without making a will, or giving any of her property to the claimant, or paying him for his services; that, after the claimant went to work for her she often told the witness in the claimant's presence that he was to have everything at her death, and that he lived and boarded with her during the time he was working for her, and, during that time, got his clothes and spending money from her, or out of the business he had charge of.

Mrs. Mary Rosipal, testifying for the plaintiff, said that she knew his mother intimately for a great number of years prior to her death; that she had often seen the plaintiff working in the saloon for his mother — had seen him working there for a number of years; that she had often heard her say that he was to have everything at her death. " Thomas worked, and so did the other children, together in one household.  Thomas ran the saloon business."

Thomas Roth testified to a long acquaintance with Mrs. Pelikan, and to the fact of the services having been rendered by the claimant, as stated by the preceding witnesses. He also stated that he had been in the saloon business in St. Louis for about thirty-two years; that he knew the value of such services, and that they were worth about $15.00 per month with board and washing.

The only testimony offered to disprove the fact of this agreement between mother and son was that of four witnesses, one of them a sister, one a half sister, one a half brother to the claimant, and one a person who had long boarded with the claimant's mother prior to her death. The testimony of these witnesses tended to confirm that of the plaintiff's witnesses as to the fact of the rendition of the services by the claimant.  It also tended to show that, during the period of the rendition of these services, the claimant received from his mother his board, clothing and spending money.  Three of these witnesses testified to having heard the mother say that her property was to go to her children at her death.  One of them testified that he

had never heard his mother say that the claimant was to have all the property at her death. One of them testified that she had never heard her mother say that the claimant was to have anything for his services. Another one testified to having heard her mother say that " Thomas got as much of money and clothes for his work as any of us did."

No exceptions were saved to any rulings upon the admission of testimony, and the instructions upon which the cause was submitted to the jury are not complained of. We see no ground on which we are authorized to disturb the verdict of the jury. The jury were authorized to infer from the testimony that the claimant had worked for his mother, and lived with her and her family, as some of the other children did, and that he had been treated by her as the other children had been treated — getting his living, his board, clothes, and spending money, from his mother, or out of her business. A contract of this importance, involving the entire disposition of the estate of the head of a large family, extending over a period of fifteen years, ought, it should seem, to be made out by very clear evidence. Common prudence would have required that such a contract be put in writing. To allow such an engagement to be established by parol evidence after the death of one of the principal parties to it, would strongly contravene the policy of the statute of frauds; though, of course, we do not mean to suggest that the case is embraced within the letter of the statute, for it does not appear that the title to real property is involved. It should certainly seem that a contract of this importance, if it were made, would be a matter of family history; and, while it is not very clear that declarations made by the mother to persons other than the claimant is competent evidence to disprove the fact of her having made such a contract, yet this evidence was not objected to. It was allowed to go to the jury; and it must be confessed that such declarations of a mother made to other children, and to an inmate in the house, furnish very

persuasive moral evidence against the claim set up by the plaintiff. At all events, we know of no principle upon which we can set aside a verdict because the jury have refused to believe a story told by witnesses, which does not, in itself, seem to be intrinsically probable. Where the jury have found a verdict involving a hypothesis of fact entirely unsupported by the evidence, it is our duty to interfere and direct a setting aside of the verdict; but, they being the exclusive judges of the credibility of witnesses, where they have merely refused to believe affirmative testimony, although uncontradicted, such testimony must be of a very clear and undoubted character, probable in itself, and unattended with suspicion, in order to warrant us in holding that the jury were obliged to believe it and render a verdict in accordance with it.

II. When the case was called for trial in the circuit court, according to the recitals of the bill of exceptions, the following proceedings took place: " Eighteen men of the regular panel of jurors were called to the jury-box by the sheriff, from which the parties to this suit proceeded to select a jury to try this cause. Said eighteen men were sworn by the clerk on their *voir dire*, and examined by plaintiff's attorney as to their qualifications as jurors. Having concluded which, plaintiff's attorney made certain marks on the list of jurors furnished counsel by sheriff, opposite the names of three of said jurors, by way of indicating (in the manner customary in said court) that said names were to be stricken from the list by plaintiff's attorney, by virtue of his right of peremptory challenge. Plaintiff's attorney then handed said list of jurors to defendant's attorney, who thereupon proceeded to examine said eighteen men, touching their qualifications as jurors, and this examination disclosed the fact that one of the jurors, opposite whose name no mark had been made by plaintiff's attorney, as aforesaid, knew the defendant's attorney, and so stated at the time. Defendant's counsel,

thereupon, in similar manner, indicated by marks on the jury list those whom he challenged peremptorily; and, thereupon, plaintiff's attorney asked leave of court to challenge the man (who had said he knew defendant's attorney) peremptorily, which the court refused to allow plaintiff's attorney to do; to which ruling of the court plaintiff's attorney excepted at the time. Then plaintiff's attorney asked leave of court to re-examine said juror, with a view to challenging him for cause, which leave the court refused to grant; to which ruling of the court plaintiff's attorney then and there excepted. The sheriff then read off the names of the three men who had been peremptorily challenged by defendant, and also the names of the three men opposite whose names marks had been placed by plaintiff's attorney, as before stated. And said six men were excused from the jury-box by the court. The court then instructed the clerk to swear the remaining twelve men left in the box as the jury to try the cause, among which twelve men was the one who had admitted that he knew defendant's attorney, and concerning whom the above proceedings and matters occurred. The clerk, thereupon, administered the usual oath as jurors to said jury so constituted. To all of which plaintiff's attorney then and there excepted."

We see no error in these rulings of the court. We understand from the above recitals that, instead of allowing the parties to make their challenges orally (a practice which is calculated to wound the feelings of the veniremen challenged), it was the practice of the court to require the parties to make their challenges by checking upon the list the names which they desired not to be called. We understand that when a party thus checked a name, he made his peremptory challenge of that juror. If there is any doubt about this, we feel sure that, in accordance with well settled principles, we are entitled, in support of the action of the circuit court, to presume that this was the meaning of the practice of checking the names on the list. This being

so, the case appears to be governed by a rule for which there is old authority, that a party having once made his peremptory challenge, can not capriciously withdraw it. " A juror was challenged by the plaintiff, and immediately the defendant challenged him also; and before the court had ordered him to be withdrawn, the plaintiff would have relinquished his challenge." This privilege the court did not concede, although some opinion to the contrary was manifested by certain clerks of the court. 2 Dyer, 198 b (51). Like other matters relating to the conduct of trials, this matter must, we take it, be regarded as resting largely in the sound discretion of the court. *Morrison* v. *Lovejoy*, 6 Minn. 319.. If the court had allowed the request preferred by the plaintiff, it may be doubted whether the defendant would have had any ground to complain of an abuse of discretion. *United States* v. *Porter*, 2 Dall. 345; *Garrison* v. *Portland*, 2 Ore. 123. Clearly, the plaintiff has not. Although the discretion of allowing a challenge to be withdrawn has been sometimes upheld, yet it has been observed that this permission ought to be very cautiously granted; otherwise, the right to reject, which is the only right embraced in the right of challenge, might be perverted into the right to select, which the right of challenge is not intended to give. — *United States* v. *Marchant*, 4 Mason, 158; *s. c.* 12 Wheat. 480; *The State* v. *Wise*, 7 Rich. L. 412; *The State* v. *Cazeau*, 8 La. Ann. 109; *The State* v. *Cardoza*, 11 S. C. 195, 249; *Maton* v. *The People*, 15 Ill. 536, 539; *Cruce* v. *The State*, 59 Ga. 83, 90; *The State* v. *Smith*, 2 Ired. L. 402; *The State* v. *Arthur*, 2 Dev. 217; *Turpin* v. *The State* (Sup. Ct. Md., October, 1880), 2 Crim. L. Mag. 532. It has often been held, even in criminal trials, that the prisoner can not, after having challenged a juror peremptorily, subsequently withdraw the challenge, and insist that he shall sit upon the jury, or substitute a challenge for cause, the grounds of which came to his knowledge after the peremptory challenge had been taken.

*The State* v. *Price*, 10 Rich. L. 351 ; *The State* v. *Coleman*,
8 S. C. 237 ; *Rex* v. *Parry*, 7 Car. & P. 838 ; *Furman* v.
*Applegate*, 23 N. J. L. 28. On like grounds, where a
juror has been challenged for favor, and excluded, the
challenging party can not afterwards be heard to say that
the juror ought not to have been discharged ; nor can he
insist on examining him on oath to make it appear that he
is really indifferent, and, therefore, a competent juror.
*The State* v. *Creasman*, 10 Ired. L. 95. Especially is it true
that the right to withdraw a peremptory challenge ought
not to be permitted where the other party has exhausted
his peremptory challenges, because to allow the right under
such circumstance might work a fraud upon the other party.
*The Commonwealth* v. *Twitchell*, 1 Brewst. 551. Applying
these principles to the present case, it is clear of doubt that
the court properly exercised its discretion in refusing to al-
low the plaintiff to withdraw one of his challenges and to
challenge another juror peremptorily, after both parties had
finished the examination of the panel on their *voir dire*, and
had exhausted their peremptory challenges.

Nor do we see that the court abused its discretion in re-
fusing to allow the plaintiff's attorney to re-examine the
juror in question, with a view of challenging him for cause.
The mere circumstance that the juror was acquainted with
the defendant's attorney suggests no ground of disquali-
fication. The statement of the juror of this fact indicates
no affection on his part towards the plaintiff's attorney
such as would control his judgment, but it rather indicates
a spirit of honest frankness which should always character-
ize those who take part in the administration of justice. It
is a well settled rule, applied by appellate courts when called
upon to revise the rulings of trial courts in matters of dis-
cretion, that these rulings will not be disturbed unless pre-
judice appears. The mere fact that a juror may be
acquainted with the attorney of the opposite party raises no
suspicion of prejudice. Some of the older practitioners at

the bar could scarcely appear before a panel of jurors without meeting acquaintances among them, and it would be a novel idea that the fact of such acquaintanceship should be held up as a ground of challenge for cause.

III. The bill of exceptions also contains the following recitals : " Defendant's attorney then proceeded to address the jury and sum up the evidence ; and, in so doing stated and argued that there was a conspiracy between the witness William Vojta and the plaintiff Thomas Vojta, for the purpose and with a view of getting plaintiff's claim allowed against the estate of Johanna Pelikan, in order to beat the balance of the heirs to said estate out of their distributive shares in their mother's said estate. To all of which statements and argument plaintiff's attorney then and there objected, for the reason that there was no evidence before the jury warranting the same. But said argument and statements were allowed to go to the jury, to which plaintiff excepted at the time."

Whether a new trial will be granted upon the ground of the misconduct of an attorney, of a juror, or the like, is regarded in some jurisdictions as entirely a question of discretion with the trial court, which discretion is not subject to revision upon appeal. Our practice, perhaps, regards it also as a matter of discretion, but subject to revision and reversal in cases of manifest abuse. We see no manifest abuse of discretion in the action of the court above recited. It is not stated that the counsel for the defendant, in addressing the jury, claimed that there was evidence of a conspiracy directly furnished by the testimony of the witnesses. He may have urged them to accept the theory that there was a conspiracy, as a matter of inference from the testimony, and from the conduct and situation of the witnesses. No intelligent jury, we take it, would regard this as a statement of evidential facts, or as any thing beyond a lawyer's argument. The privilege of counsel in arguing to the jury what deductions they shall draw from the testimony must

be allowed to be exercised within large limits.   If counsel are hampered and restrained by the fear of affording ground for a new trial, in arguing the causes of their clients before juries, they may be prevented, in many cases, from doing full justice to their clients, and from discharging in a full measure their duties as advocates.   At all events, we, not having been present at the trial to observe the demeanor of the witnesses, and having before us what appears to be no more than a skeleton report of their testimony, can not say that the court abused its discretion in refusing to tell the jury not to consider the remarks of the defendant's counsel thus objected to.   We are the more inclined so to hold, from the fact that the plaintiff's counsel had an opportunity to reply.   Under such circumstances, looking at the matter as we must, from a distance, and deferring as we ought, to the judgment of the trial court in a matter of discretion, we think we may safely trust the conclusion that the skill and candor of the plaintiff's counsel in reply counteracted any undue prejudice in the minds of the jurors produced by this mere rhetoric of the defendant's counsel. On the whole, we think that the judgment of the circuit court ought to be affirmed.   It is so ordered.   All the judges concur.