39 So.2d 898

**STATE v. COOK et al.**
No. 39259.

March 21, 1949.

A. Veazie Pavy and Vincent Moseley, both of Opelousas, for defendants and appellants.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and J. Y. Fontenot, Dist. Atty., of Opelousas, for appellee.

MOISE, Justice.

Joseph and Matthew Cook were indicted and tried for the murder of A. B. Couvillion. They are appealing to this Court from judgments of conviction and sentences of death.

The two defendants are brothers, twenty-four and twenty-three years of age. According to their confessions, they had been gambling in the Town of Melville and were walking out of town on the road by the levee when they saw a parked car and

decided to hold up the occupants. The deceased was in the car with a woman companion and it was 1 o'clock in the morning. The brothers approached the automobile on opposite sides, levelled their guns on the occupants, then got into the back seat of the car, and ordered that the car be driven to the end of an isolated lane. At pistol point, the woman was then commanded to get out of the car, and while deceased was still seated in the car, he was struck on the head with the butts of their pistols, one of the defendants shot and killed him, and thereafter the woman was taken to the edge of the woods and raped by both of the defendants.

A description of both men was given by the woman. Joseph Cook was arrested at his home fully armed with a pistol, shotgun loaded with buckshot, and additional buckshot were beside his bed. Matthew Cook was likewise apprehended. Both men made written confessions in which each blamed the other for the crime.

The indictment returned in the case jointly charged the defendants with the murder of Mr. Couvillion. This indictment was filed September 30, 1948. Counsel were appointed by the court to represent the defendants. They were arraigned on October 15, 1948. Before trial, certain preliminary pleadings were filed by counsel for the defendants, the first being motions for severance, which were fixed, argued and submitted. These motions were denied and a bill reserved. A plea of insanity was then filed on behalf of the de-

fendants, together with a petition for the appointment of a lunacy commission, to inquire into the mental condition of the accused at the time of the trial and also at the time of the commission of the crime. After taking the plea under advisement, the court overruled the same and the judge's written reasons form a part of the record. A bill of exception was reserved to his ruling.

This appeal is now before us on five bills of exception.

Bill of Exception No. 1 was taken to the ruling with reference to the absence of Mr. L. Austin Fontenot, one of the three attorneys named to represent the defendants. The other two attorneys for the defendants objected to proceeding with the trial in the absence of Mr. Fontenot, and upon their objection being overruled, a bill was reserved. All of the attorneys were appointed prior to arraignment and in conformity with the provisions of the Code of Criminal Procedure, Article 143, which provides:

"Whenever an accused charged with a felony shall make affidavit that he is unable to procure or employ counsel learned in the law, the court before whom he shall be tried, or some judge thereof, shall immediately assign to him such counsel; provided, that if the accused is charged with a capital offense, the court shall assign counsel for his defense of at least five (5) years' actual experience at the bar."

In the per curiam to this bill, the trial judge states that one of the attorneys who defended the accused had been engaged in the practice of both criminal and civil law for approximately twenty-five years; that the other had been so practicing for about ten or more years; that these two attorneys conducted an able defense, and the fact that Mr. Fontenot did not assist made no material difference, it being pointed out that both of the attorneys who actually conducted the defense had actual experience at the bar for more than five years. Therefore, this bill has no merit.

Bill No. 2 was reserved to the court's ruling on the motions filed by both defendants for a severance. The motions are identical and they allege that the defense of Matthew Cook is antagonistic to the defense of Joseph Cook and vice versa; that one or the other is innocent and his defense is that the crime was entirely committed by the other and that there should be separate trials because of a confession made by the one accusing the other of having committed the crime. With reference to these motions for severance, there was a stipulation by the State that it had in its possession, and intended to use in the prosecution of the defendants, two written and signed confessions voluntarily given and executed by Joseph and Matthew Cook. That in making his written confession, Joseph Cook undertook to state that Matthew Cook fired the bullets into the body of the deceased, but by a confession subsequently given orally, the accused Joseph

Cook admitted that he and he alone fired the bullets into the body of the deceased; and likewise, Matthew Cook, by his subsequent or second confession, orally given, confirmed the fact that Joseph Cook fired the bullets; that the State would undertake to prove both confessions and would also undertake to prove that aside from the bullet wounds found on the body of the deceased, there were crushing blows to the skull, sufficient in nature and extent to produce death; that these blows were inflicted on the deceased by the defendants and in the use of the butts or other parts of the pistols carried by them; and that the State further expected to prove that both defendants were personally present when the homicide was committed, mutually aiding and abetting each other in the actual commission of the crime. It is plain, therefore, that there was no showing of how the defense to be offered by one of the accused might conflict with the defense to be offered by the other. There was no evidence before the court showing that the defenses were antagonistic nor did any conflict or antagonism appear during the trial.

Article 316 of the Code of Criminal Procedure provides:

"Persons jointly indicted shall be jointly tried, unless the district attorney elect to place such persons separately upon trial, or unless the court, upon motion of defendant, shall, after a hearing contradictorily with the district attorney, order a severance."

█ It is true that where defenses are antagonistic and where the confessions of each of the defendants incriminate the other and it is intended to use such confessions in evidence, a severance should be granted, but the subsequent oral confessions completely take this case out of the general law and fix the blame for the actual firing of the shots upon one of these defendants.

█ The per curiam of the court states in part that " * * * the proof submitted to the jury during the course of the trial certainly did not show that the defenses were antagonistic. In fact, the evidence showed that both defendants were both present, aiding and mutually abetting in the commission of the crime. This makes them both guilty as principals.

" 'Severance is not a matter of right, but vests in the sound discretion of the trial court, whose ruling will not be interfered with, unless manifestly erroneous and injurious to accused. State v. Leonard, 6 La. Ann. 420; State v. Cazeau, 8 La.Ann. 109; State v. Ducote, 43 La.Ann. 185, 8 So. 439; State v. Taylor, 45 La.Ann. 605, 12 So. 927; State v. Lee, 46 La.Ann. 623, 15 So. 159; State v. Desroche, 47 La.Ann. 651, 17 So. 209; State v. Cately, 52 La.Ann. 574, 26 So. 1004; State v. Adam, 105 La. 737, 30 So. 101; State v. Watkins, 106 La. 380, 31 So. 10; State v. Johnson, 116 La. 856, 41 So. 117; State v. Phenix, 134 La. 329, 64 So. 129; State v. Hill, 160 La. 579, 107 So. 433.' "

There is no merit in Bill No. 2.

Bill of exception No. 3 was reserved to the ruling of the court on the admissibility of the confessions of the accused, attorneys for defendants contending that these confessions were not freely and voluntarily made.

█ "The question of the admissibility of a confession is for the judge, its effect for the jury", citing State v. Bessa et al., 115 La. 259, 38 So. 985; State v. Collens, 37 La.Ann. 607; and "whether a sufficient basis was laid for the admission of an alleged voluntary confession is a question of fact upon which the ruling of the trial judge will not be disturbed unless clearly against the preponderance of the evidence", citing State v. Woods, 124 La. 738, 50 So. 671; Marr's Crim.Juris. of La., 2d Ed. (1923) Sec. 539. When a confession is voluntarily made, the judge has no right to exclude it, even when shown on its face to be false. State v. Bessa et al., supra.

█ An examination of the testimony of the witnesses annexed to this bill, to-wit: Joe Artall, Deputy Sheriff, Sheriff Clayton Guilbeau, Edward Robin, Chief Deputy Tax Collector, Captain Ben H. Morgan, and Lt. Ben F. Ragusa of the State Police Department, shows conclusively that the confessions were freely and voluntarily made and were not made under the influence of fear, duress, intimidation, threat, promise or inducement. There is no merit in this bill.

Bill of exception No. 4 was taken to the ruling of the trial court on defendants' application for the appointment of a lunacy commission to determine the mental condition of the defendants at the "present" time and also at the time of the commission of the offense. These motions set forth alleged hereditary insanity in the family of the accused. The court held that this was not sufficient to create in the court's mind belief of their insanity.

▬▬▬ The per curiam of the court contains the following statement:

"The Court requested Dr. Gerald Bertinot, the Coroner, to examine the defendants in the case at bar. The Coroner had the defendants under observation and, after examining them, reported to the Court that, according to his examination, there was no indication of insanity. He stated that he understood from them that there was a history of insanity in the family. The Coroner further stated that they were able to answer all of the questions that he propounded to them."

The court had jurisdiction and authority to hear and decide the issue of "present" insanity. No showing had been made that defendants were insane. This entire question addresses itself to the sound discretion of the court. State v. Bessar et al., 213 La. 299, 34 So.2d 785. The court refused to appoint a commission to examine their mental condition as to "present" insanity. The court correctly held that it was without authority to pass upon insanity at the time of the commission of the crime, as this was a matter affecting the guilt or innocence of the accused and, under the provisions of the Code of Criminal Procedure, Article 267, as amended by Act No. 136 of 1932 and Act No. 261 of 1944, was an issue to be decided by the jury. State v. Sample, 203 La. 841, 14 So.2d 678; State v. Eisenhardt, 185 La. 308, 169 So. 417; State v. Messer, 194 La. 238, 193 So. 633. On this point the per curiam states: "* * * But, there was a total lack of evidence to prove insanity at the time of the commission of the crime. These are, of course, facts for the jury, * * *. If, however, the defense attorneys had made insanity at the time of the commission of the crime an issue in the cause and had they, at that time, requested the Court to appoint a Commission to inquire into the insanity of the defendants, the Court most assuredly would have appointed a Commission in compliance with Article 267 of the Louisiana Code of Criminal Procedure * * *. The Court was of the opinion that the defense attorneys had abandoned this phase of insanity and was surprised to find that they attempted to make this an issue in Bill of Exception No. 4 * * *. Therefore, the allegation in Bill No. 4 wherein it is alleged that the Court overruled the motion for the appointment of a Commission at the time the crime was committed, is incorrect and a misstatement of fact."

■ We find no abuse of the discretion vested in the court, in refusing to appoint a lunacy commission.

■ The district court refused to sign bill of exception No. 5 for the reasons cited in its per curiam that no objection was made to its charge and no special charges were submitted. No bill was reserved and none signed. In the absence of a formal bill, there is nothing for review. Art. 499, Code of Criminal Procedure; State v. Shropulas, 164 La. 940, 114 So. 844; State v. Snowden, 174 La. 156, 140 So. 9, and State v. Odom, 192 La. 257, 187 So. 659.

■ The motion for a new trial merely sets forth that the verdict of the jury herein is contrary to the law and the evidence; or (2) that the bills of exception reserved during the proceedings of the trial show error committed to the prejudice of the accused. These alleged errors having been covered by the bills of exception, the motion offers nothing for review.

The motion in arrest of judgment is based on (1) the failure of the court to order a severance; (2) that movers were not represented by counsel appointed by the court; and (3) that the written charge of the court to the jury was erroneous and not sufficient in law. These alleged errors have likewise been covered in the discussion of the bills of exception.

These defendants were represented by competent and able counsel, their confessions were voluntarily made, and all of the rights guaranteed to them by the Constitution and laws of the State were fully protected. The jury found that they were guilty as charged.

The convictions and sentences are affirmed.

O'NIELL, C.J., takes no part.