## The State v. Joseph Havelin et al.

The voluntary confessions of persons accused of crimes, received by the committing magis-
trate without promise or threats, are admissible in evidence against the accused on his
trial; and in order to exclude as evidence any voluntary confessions made by the accused,
it must be proved that the confessions were made under a promise of advantage, and that
a mere hope resulting from a conversation in which a promise was neither expressed or
implied, is not sufficient.

The confessions of one of two persons indicted for a crime, is not evidence against the
other.

APPEAL from the First District Court of New Orleans, *McHenry*, J.
*Isaac Johnson*, Attorney General, for the State.  *R. Hunt*, for appellees.
The judgment of the court was pronounced by

PRESTON, J.  The defendants, accused of preparing combustible matters and
putting them in a place with intent to set fire to a building, were convicted and
sentenced, and have appealed.

In the course of the trial, the district attorney offered in evidence the follow-
ing document as the voluntary confession of *Otterson:* "This certifies that having
been a party concerned in setting fire to the grocery store at the corner of Hevia
and Phillippa streets, on the morning of the 22d instant, and wishing to make
amends as far as possible for the wrong I have done, I make the following volun-
tary statement: I was engaged by *Joseph Havelin*, about the first of the present
month, as an assistant in his grocery store, at the corner of Hevia and Phillippa
streets; and a few days after, in speaking to me of the hardness of times, said
if he did not succeed better soon, he would try some other plan to make money.
About the 10th, he got his stock insured.  After returning from the insurance
office he remarked to me, that it was all right now; that now, if he did not get
along, he had a plan by which he could make $1500.  He then proceeded to
tell me that he had got his stock insured for $1500, and intimated his intention
of setting the store on fire.  We spoke frequently on the subject after this, and
he wished me to set fire to the store; for which it was understood I was to
receive a handsome reward.  On the 21st instant, it was agreed between
us that the fire should take place that night.  About ten o'clock at night *Havelin*
went to his room, leaving me in the store; about half past twelve o'clock, I took
two candle boxes and a small tub, and after placing a quantity of combustible
matter in each, I poured some camphine on it, and placed one under a gin barrel,
one under a brandy barrel, and the other under an oil barrel; set fire to them,
and went into an adjoining kitchen, set fire to a quantity of shavings which I
had previously placed there, and went to my room.  I found *Havelin* lying on
the bed with his coat and shoes off, but not asleep.  In about five minutes the
alarm of fire was given, and myself and *Havelin* went down and remained
about the store untill we were arrested.  New Orleans, December 24, 1849.
(Signed) SAMUEL OTTERSON.  Witnesses: D. BUSBY.  E. CRISWELL.  JAMES
O'SULLIVAN."

The district court admitted it as evidence, and the following bill of exceptions
was taken: "Be it remembered that on the trial of this cause, *S. S. Ricker*,

a witness for the prosecution testified, that he is a police officer, and that when the defendant, *Otterson*, was in custody, he told said *Otterson* that he might have been instigated by *Havelin* to act as he had done, and that it might be best for him to make a statement; that it was possible he might be permitted to turn State's evidence, if he would make a confession; that some days after, while said *Otterson* was still in custody, said *Ricker* conversed with him again on the subject of a confession, and then reduced the substance of *Otterson's* statement, and not his express language, to writing, in the watchhouse, amid several interruptions of persons coming into the same, and conversing with him; and that he, *Ricker*, before and after writing the statement, informed *Otterson* that the statement might be used against him, and that he, *Ricker*, had no power to make him any promises of freedom; and that thereupon said *Otterson* voluntarily signed the same. That the district attorney then offered in evidence the statement referred to as the voluntary and legal confession of said *Otterson*. Defendants objected to the admissibility of this evidence, but the court overruled the objection, and allowed the written statement to go to the jury. Whereupon, defendants tendered this bill of exceptions to the ruling of the court."

By the court: "*Daniel Busby*, a witness on behalf of the State, stated, that he was present when the confession was signed, and when it was read over to *Otterson*; and when he was notified that it might be used against him, that he answered he did not care whether it was used against him or not, the confession was true; and that *Ricker* also stated that *Otterson* said the confession was true, after it was written, and before he signed it. JOHN McHENRY, Judge."

On this bill of exceptions the accused rely for a reversal of the judgment against them, on the grounds: 1st. That the court erred in permitting the confession of *Otterson* to be received in evidence, because it was not voluntary; and 2d. Because the confession should have been expressly confined by the judge, in its effects, to *Otterson* alone.

It is well settled, that a free and voluntary confession by a person accused of an offence, whether made before his apprehension or after, whether on a judicial examination, or after commitment, whether reduced to writing or not, and made to any person, at any time or place, is strong evidence against him. It is laid down, however, by elementary writers, that the confession must not be drawn from the prisoner by means of a threat or promise; for however slight the promise or threat may have been, a confession so obtained cannot be received in evidence; and that if a confession has been obtained from the prisoner by undue means, any statement afterwards made by him under the influence of that confession cannot be given in evidence. And cases are cited in support of these principles, in which the confessions of prisoners have been rejected when offered in evidence on their trial, in consequence of having been drawn from them by language addressed to them by public officers, very similar to that which was used by the police officer to *Otterson* in the present case: "It might be best for him, for possibly he might be permitted to turn state's evidence if he would make a confession." But Mr. Archbold, probably the most accurate writer on criminal law, adopts the following conclusions: "The only questions in these cases are: Was any promise of favor, or any menace or undue terror made use of to induce the prisoner to confess? and if so, was the prisoner induced by such promise or menace to make the confession attempted to be given in evidence? If the judge be of opinion in the affirmative on both of these questions, he will reject the evidence. If, on the contrary, it appear to

him from circumstances, that although such promises or menaces were held out, they did not operate upon the mind of the prisoner, but his confession was voluntary notwithstanding, and he was not biased by the promise or threat in making it, the judge will admit the evidence." Archbold, 112.

Our Territorial Legislature adopted the principles of the common law in the prosecution of crimes, so far as not altered by statutes. But statutes were passed in 1805 and 1807, by which it was established, that the voluntary declarations of persons accused of crimes, received by examining magistrates without promise or threats, should be evidence on the trial. Judicial and extra-judicial confessions have always been placed upon the same footing as to the question whether they should be considered voluntary confessions or not. It would seem, therefore, that, under our laws, a promise of advantage should be proved, in order to exclude confessions; and that a mere hope resulting from a conversation, in which a promise was neither expressed nor implied, is not sufficient.

Indeed, the eagerness with which any pretext was seized upon at common law to exclude their confessions, upon the trials of persons accused of crimes, probably grew out of the rigor of the Criminal Code of England; and it is questionable whether so much strictness should be adhered to under our milder code. For, the only principles upon which confessions are rejected in any case is, that they may have been obtained by such promises or threats as render it uncertain whether or not they are true. It would seem reasonable, then, and conformable to principle to allow the confessions, if not extorted, to be laid before the jury as proper judges to determine what credit is due to them under the circumstances of the case. At least, there is no reason for courts to exercise great strictness in excluding them from the consideration of the jury as being worthy of no credit; and in doing so the judge is to exercise a legal discretion, which must be governed by the circumstances of each particular case, and with regard to which it is difficult to lay down any general rules. In exercising his discretion, he may consider the age, situation and character of the prisoner, and the circumstances under which his confession was made. In the present case, for example, he might consider how far the confessions conformed to facts stated by other witnesses, as, that on an alarm of fire, combustible materials were found in candle boxes under brandy, gin and oil barrels, diluted with camphine, or otherwise. For it appears to have been decided in Tennessee, in the case of the *State* v. *Hudson*, that confessions obtained by such threats and promises as would have excluded them, yet if they are attended with extraneous facts which show them to be true, they are admissible in evidence. 9 Yerger's Rep. 408. So the judge may have considered the prisoner capable of reasoning with himself: that, as he had no apparent motive to set fire to the building, and *Havelin* had the pecuniary interest growing out of his insurance, and the promptings of his embarrassments, that the public officers, to insure the conviction of the latter as instigator of the crime, would allow him to turn States' evidence if he made confession of the facts. Considering, then, that no promises were in fact made to him by the police officers, and that he was fully informed that his statements might be used against him, he may have persisted in making the confession from the promptings of his own hopes founded upon the nature of his case, and not from any promises, which he was expressly informed could not be made. We cannot, therefore, say, that the court erred in admitting the confessions as evidence against him.

It was not, however, evidence against *Havelin*; and the bill of exceptions affords us no reason to believe, that the court did not receive it as evidence

against *Otterson* alone. *Havelin* did not specially except to it as evidence against himself, but joined *Otterson* in opposing it as evidence in the case, and took a joint bill of exceptions.

We must suppose that the judge knew and did his duty, until the contrary is made clearly to appear by the record. We are bound therefore, to believe that the judge in receiving the confession as evidence, and his final charge to the jury informed them, that it was evidence against *Otterson* alone, who made it, and not against *Havelin.* We are sure the able counsel of the accused must have invoked the aid of the court in these respects, and equally so that the court could not have refused it, since enjoined by the most common principles of law. Indeed, the court, in referring to *Busby's* testimony in the bill of exceptions, indicates that the confession was received in evidence against *Otterson* alone.

The judgment of the district court is therefore affirmed, with costs.