366 So.2d 1278 (1978)
STATE of Louisiana
v.
Clifford McGRAW and Valerie Manchester.
No. 61172.
Supreme Court of Louisiana.
June 19, 1978.
On Rehearing January 29, 1979.
*1280 Clyde D. Merritt, Orleans Indigent Defender Program, New Orleans, for Clifford McGraw, defendant-appellant.
Arthur A. Lemann, III, Supervising Atty., New Orleans, Kim Allison Gandy, Student Practitioner, Loyola Law School Clinic for Valerie Manchester, defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
The defendants, Clifford McGraw and Ms. Valerie Manchester, were jointly indicted and tried for the first degree murder, La.R.S. 14:30 (1973) of Gregory Kress. The defendant McGraw was convicted as charged and sentenced to death. Ms. Manchester was convicted of second degree murder, La.R.S. 14:30.1, and sentenced to life imprisonment.
The defendants, who were and are each represented by separate counsel, filed numerous assignments of error (McGraw, twenty-nine; Manchester, sixteen). Ultimately, we conclude that Ms. Manchester's conviction must be reversed due to the introduction on rebuttal of an inculpatory statement by her without first establishing that it was freely and voluntarily given. We find no reversible error as to McGraw and affirm his conviction.

Context Facts
Under the State's evidence, the circumstances of the crime, which resulted in the brutal murder of Kress, were:
Kress and his bride, a Pennsylvania couple, were in New Orleans on their honeymoon. Late in the evening of February 24, 1975, they met the codefendants in a French Quarter night spot. They had several drinks together, and they all ultimately wound up in the apartment of the defendant McGraw, ostensibly to have a drink before going to breakfast.
When they arrived there, McGraw asked Kress into another room and closed the door. Mrs. Kress heard loud thuds and noises coming from the other room. When she attempted to investigate, Ms. Manchester attempted to prevent her from entering the room by hitting her. McGraw came out of the room, struggled with and struck her, and then with Ms. Manchester, took Mrs. Kress into the street. Her screams brought police to the area.
*1281 The victim, Kress, was subsequently found dead. He had been beaten and shot. Mrs. Kress was also severely injured (broken jaw and chin) by the beating. The husband had been robbed of his wallet and ring. Mrs. Kress' rings were also taken.
Reversible Error as to Valerie Manchester
In Manchester's Assignment of Error No. 10 she averred that the trial court erred in allowing the State to introduce rebuttal testimony of an inculpatory statement she made to police officers without establishing first that the statement was freely and voluntarily given. For the reasons here stated, we find Manchester's contention to have merit warranting reversal.
At trial Manchester took the stand in her own defense and stated, in essence, that she was unaware that McGraw intended to rob the Kresses or murder Gregory Kress, and that she did not injure Janet Kress. The prosecutor cross-examined her about a statement she gave Detective George Heath while in Central Lockup the morning of February 25, 1975. She acknowledged that Detective Heath and Sergeant Eugene Knight came to speak with her but denied making any statement. To rebut Manchester's testimony, Detective Heath was recalled and testified, over defendant's objection that a sufficient predicate had not been laid, that Manchester was given her Miranda rights and gave a statement: "She said first time she set eyes on Janet and Gregory Kress she intended to rob them, they looked like a good mark . . . She told me that she cut Janet with carpet knife."
The admissibility of the inculpatory statement objected to at trial had previously been ruled upon at a hearing on defendants' motions to suppress. At the hearing it was ascertained that certain statements were obtained from Manchester and McGraw after the defendants had been to Magistrate Court where an attorney had been appointed to represent them; hence the judge ruled that "[a]ny statement after Magistrate Court and a lawyer not sent for are inadmissible." Other statements made by defendants prior to their appearance in Magistrate Court were ruled admissible. The statement testified to by the State witness on rebuttal was the very statement by Manchester that was held inadmissible at the motion to suppress hearing.
It it well settled that the rules governing the admissibility of confessions are also applicable to admissions involving the existence of criminal intent or inculpatory fact. See, e. g., State v. Fruge, 251 La. 283, 204 So.2d 287 (1967), cert, denied, 391 U.S. 912, 88 S.Ct. 1806, 20 L.Ed.2d 652; State v. Gregoire, 249 La. 890, 192 So.2d 114 (1966), appeal dismissed, 389 U.S. 154, 88 S.Ct. 339, 19 L.Ed.2d 354; State v. Bueche, 243 La. 160, 142 So.2d 381 (1962); State v. Maney, 242 La. 223, 135 So.2d 473 (1961); State v. Domino, 234 La. 950, 102 So.2d 227 (1958). Before a confession or inculpatory statement may be introduced into evidence, the State must prove affirmatively, and beyond a reasonable doubt, that the statement was freely and voluntarily made, C.Cr.P. 703(C); R.S. 15:451; State v. Scott, 355 So.2d 231 (La.1978); State v. Henry, 352 So.2d 643 (La. 1977); State v. Glover, 343 So.2d 118 (La.1977), and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. R.S. 15:451; State v. Thomason, 353 So.2d 235 (1977); State v. Trudell, 350 So.2d 658 (1977). Furthermore, the State's burden is a heavy one which must be fully discharged. State v. Rheams, 352 So.2d 615 (1977); State v. Taylor, 336 So.2d 855 (1976).
Our statutes make clear that when an accused takes the witness stand he is subject to all the rules applying to other witnesses, R.S. 15:462, including those which allow a witness' testimony and credibility to be impeached by proof of a prior inconsistent statement. R.S. 15:486, 493. Nevertheless, when the impeaching statement is in the form of a confession or admission the State must still satisfy the normal rules regulating the admissibility of confessions just as if the statements had been offered in the State's case in chief. Therefore, the State, in offering an inculpatory statement for impeachment purposes, *1282 must still establish that the statement was given freely and voluntarily before it can be introduced. State v. Palmer, 232 La. 468, 94 So.2d 439 (1957); State v. Clark, 228 La. 899, 84 So.2d 452 (1955); State v. Ward, 187 La. 585, 175 So. 69 (1937); State v. Hayes, 162 La. 310, 110 So. 486 (1926).
In State v. Palmer, supra, under facts similar to those in the instant case, reversible error was found where the State offered, over defense objection, an inculpatory statement made by defendant for the purposes of impeachment on rebuttal without a foundation having been laid to show the statement was freely and voluntarily given. We see no reason for withdrawing from this position, which prevents the State from circumventing the requirement of showing the voluntary nature of a confession or admission by producing the statement on rebuttal rather than during the case in chief.
The State contends that even though Manchester's inculpatory statement had previously been ruled inadmissible by the trial judge, that ruling was not based upon a finding that the statement was involuntary under R.S. 15:451, but rather on the absence of defendant's appointed counsel when the statement was made. Therefore it argues that the statement was admissible against Manchester as impeachment testimony, relying upon the authority of the United States Supreme Court's decision in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Harris held that a statement made by the defendant to the police, although inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to establish the prosecution's case in chief, could properly be used to impeach his credibility as a witness. Harris, however, is not dispositive, as the State contends, for it does not have the effect of allowing the prosecution to dispense with the requirements for admissibility established under State law. As the high court stated:

"Miranda barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards." 401 U.S. at 224, 91 S.Ct. at 645, 28 L.Ed.2d at 4. (Emphasis added).
The State further alleges that "voluminous testimony" at the hearing on the motion to suppress by the arresting and investigating officers established that defendant was fully warned of her Miranda rights and that there were no threats, inducements, abuse or coercion that would render the statement involuntary. This, along with Manchester's failure to offer evidence to rebut this showing, the State contends, is sufficient to establish that the statement was not obtained in violation of R.S. 15:451, 452.
We find, however, that the State's characterization of the testimony at the motion to suppress hearing is inaccurate. Although Detective Heath testified that neither defendant was subjected to physical abuse in his presence, this testimony was in regard to statements made by the defendants upon their arrival at the detective bureau on February 24. The statement introduced by the State on rebuttal was made by Manchester the morning of the 25th when Detective Heath and Sergeant Knight came to Central Lockup to interview her. There was no testimony elicited at the hearing from which the voluntariness of defendant's statement could be ascertained.
Accordingly, the State failed to satisfy its obligation to prove beyond a reasonable doubt that Manchester's inculpatory statement was free and voluntary, a burden which still must be met when an inculpatory statement is introduced for impeachment purposes. Manchester's conviction, therefore, must be reversed.

Assignments of Error Nos. 23, 24 and 27 (McGraw)
The most serious question is raised by these assignments. Defendant contends *1283 the trial court erred in denying his motions for severance and mistrial made in certain instances during the course of the trial. These motions were made on the basis that the defenses, as they developed at trial, were antagonistic and defendant was forced to defend not only against the State, but against his co-defendant, Ms. Manchester.[1]
It is clear, from a long line of authority, that persons jointly indicted are not entitled to a severance of trial as a matter of right.[2] Rather, the grant or denial of a motion for severance lies within the discretion of the trial judge whose ruling will not be interfered with unless exercised arbitrarily or to the prejudice of the accused.[3]
Neither C.Cr.P. 704(2) ("Jointly indicted defendants shall be tried jointly unless . . . The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.") nor its predecessor, Article 316 of the 1928 Code of Criminal Procedure ("Persons jointly indicted shall be jointly tried . . . unless the court, upon motion of defendant, shall, after hearing contradictorily with the district attorney, order a severance."), provided the trial judge with a standard with which to exercise his authority. Hence, the cases in Louisiana developed the "antagonistic defenses" test which, when satisfied, would direct the trial judge to grant a severance. Comment (c) to C.Cr.P. 704.
The first reported case to reverse a conviction on the basis that the trial court erred in denying a severance when the defendants' defenses were antagonistic was State v. Desroche, 47 La.Ann. 651, 17 So. 209 (1895). In Desroche each defendant had made confessions incriminating the other which were used at trial. The court stated:
"To try both together was, in effect, to try each on the confession of the other; and this, of course, would be to disregard the obvious principle that no man can be affected in his rights of person or property by the statements of another out of his presence, and not assented to by him." 47 La.Ann. at 654, 17 So. at 210.
The court cited, in support of the above proposition, the decisions in State v. Johnson, 35 La.Ann. 842 (1883); State v. Jackson, 29 La.Ann. 354 (1877), and State v. Havelin, 6 La.Ann. 167 (1851). These cases involved the issue of whether the declarations and confessions of a co-defendant which implicates the other may be offered in proof against the latter; the question of the propriety of severance where antagonistic defenses are present was not at issue.
Often in these early cases where confessions of a co-accused which affected the other defendant were introduced into evidence (and no severance had been requested), it was determined that no prejudice was caused when the trial judge informed the jury that the confession or admission was to be considered only against the party who made it. State v. Sims, 106 La. 453, 31 So. 71 (1901); State v. Robinson, 52 La.Ann. 616, 27 So. 124 (1896); State v. Donelon, 45 La.Ann. 744, 12 So. 922 (1893); State v. Harris, 27 La.Ann. 572 (1875); State v. Havelin, supra; State v. Hogan, 3 La.Ann.
*1284 714 (1848). Where the trial judge failed to give the requisite jury instruction reversible error was found. State v. Johnson, 47 La. Ann. 1225, 17 So. 789 (1895); State v. Weasel, 30 La.Ann. 919 (1878); State v. Monie, 26 La.Ann. 513 (1874).
Although the trial judge instructed the jury in Desroche to disregard the confession except as against the confessor, the court found that the jury charge did not correct the error made in denying the severance.[4] Referring to State v. Johnson, supra, State v. Jackson, supra, and State v. Havelin, supra, as "authorities in favor of the severance" which the court considered supplemented by Wharton on Criminal Law and Bishop on Criminal Procedure, 1 Whart. Cr.Law (7th ed.) § 733; 1 Bish.Cr.Proc. § 1019, the court held that "when the defenses are antagonistic and confessions are to be used, the severance should be granted." 47 La.Ann. at 656, 17 So. at 211.[5]
Cases prior to Desroche had considered the question of severance where confessions of one or both codefendants implicated the other and the defenses were allegedly antagonistic. No error was found in denial of the severance because either the prosecutor disclosed the intention not to use the confessions, State v. Lee, 46 La.Ann. 623, 15 So. 159 (1894); State v. Gournet, 43 La.Ann. 197, 9 So. 436 (1891); State v. Ducote, 43 La.Ann. 185, 8 So. 439 (1891), or the defenses were not shown to be antagonistic, State v. Taylor, 45 La.Ann. 605, 12 So. 927 (1893).
In cases following Desroche confessions of codefendants were often involved, but the cases were not always so limited. Often the denial of a severance was held proper where the defenses were determined to be nonantagonistic. State v. Jenkins, 340 So.2d 157 (La.1976); State v. Kemp, 251 La. 592, 205 So.2d 411 (1967); State v. Progue, 243 La. 337, 144 So.2d 352 (1962); State v. Labat, 226 La. 201, 75 So.2d 333 (1954); State v. Cook, 215 La. 163, 39 So.2d 898 (1949); State v. Taylor, 173 La. 1010, 139 So. 463 (1932); State v. Lamotte, 168 La. 837, 123 So. 591 (1929); State v. Birbiglia, 149 La. 4, 88 So. 533 (1921); State v. Simon, 115 La. 732, 39 So. 971 (1905). And where the motion to sever merely alleged antagonism in general terms without setting forth facts to enable the trial judge to ascertain whether there was antagonism necessitating a severance, or where no proof of antagonism or conflict was shown, the severance denial was deemed proper. State v. Hunter, 340 So.2d 226 (La.1976); State v. Ross, 263 La. 271, 268 So.2d 222 (1972); State v. Bonner, 252 La. 200, 210 So.2d 319 (1968); State v. Progue, supra; State v. Livsey, 190 La. 474, 182 So. 576 (1938); State v. Birbiglia, supra; State v. Simon, supra.
Few cases can be found where severance on the basis of antagonistic defenses was required.
Merit was found to a defendant's allegation that antagonistic defenses should warrant a severance of trials of co-accuseds in State v. Bessa, 115 La. 259, 38 So. 985 (1905), and more recently in State v. Thibodeaux, 315 So.2d 769 (La.1975). In Bessa the convictions of two black men were reversed because the district attorney made repeated remarks appealing to racial prejudice. The court did not discuss whether the denial of a motion to sever constituted reversible error; however, in remanding the case for a new trial, the court ordered the defendants to be tried separately, finding the defenses to be clearly antagonistic since *1285 there was no question that one or the other of the accused committed the crime, the sole question being which one of the defendants was responsible.[6] The antagonistic defenses question reached this court in Thibodeaux on a writ of certiorari to a trial judge's denial of a pretrial motion to sever. The evidence adduced at a hearing on the motion to sever disclosed that one defendant intended to place sole blame for the offense on his co-defendant. This, we determined, clearly showed the defenses to be antagonistic. Accordingly, we reversed the trial judge's ruling, holding that justice required a severance.
The case before us arises under a different posture from that in Thibodeaux. While Thibodeaux reached us still in the pretrial stages, in the instant case the trial has been concluded and with it we have a complete record of evidence and testimony. Although McGraw did not file a pretrial motion to sever, he is not precluded from raising the issue since the motion for severance or mistrial may be made during the trial at the time the prejudice to the mover becomes manifest. State v. Ross, supra.
When Ms. Manchester took the stand and cast sole responsibility upon McGraw, and her attorney emphasized McGraw's guilt in closing argument, McGraw was forced to "defend not only against the state, but against his co-defendant." State v. Thibodeaux, 315 So.2d at 771. The defenses, therefore, were antagonistic. Nevertheless, reversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown. C.Cr.P. 921. As the comments to C.Cr.P. 704 indicate, the "antagonistic defenses" test was not codified as a standard to be used by the court in granting a severance when, in his opinion, after a contradictory hearing, "justice requires it." According to the comments, the idea from the federal rules, that a severance may be granted when a joint trial may result in "prejudice," has been incorporated into the standard of "justice" in art. 704. Comment (d) to C.Cr.P. 704.
From a reading of the record it becomes apparent that there was substantial competent evidence of McGraw's guilt. McGraw's conviction should have been a certainty, independent of Ms. Manchester's testimony and her counsel's closing argument. Therefore, we conclude that McGraw's substantial rights were not impaired by the denial of his motion to sever and mistrial and that he was not denied a fair trial. After trial has been concluded, an abuse of discretion will not be found unless the defendant would probably not have been convicted had he been allowed a separate trial. In the instant case, however, the evidence amply supports the verdict apart from Ms. Manchester's testimony or closing argument of her attorney. Accordingly, we hold that the denial of McGraw's motion to sever did not constitute reversible error.

Assignment of Error No. 7 (McGraw)
Defendant contends that the trial court erred in denying his motion to have the State produce a list in its possession containing the voting records of the prospective jurors in prior criminal trials. The motion, filed by defendant Manchester and joined in by defendant McGraw, alleged the State had possession of such a list, that they were indigent and neither had the funds nor means to determine the jury panel's prior voting record, and that they had sufficient cause to believe the State intended to use the information to obtain partial jurors who would render a guilty verdict. After the trial judge ascertained that the State possessed the requested information, the *1286 motion was denied. Defendant makes no allegation, nor does the record reflect, that the State used the list during the trial in exercising jury challenges.
In State v. Singleton, 352 So.2d 191 (La. 1977), we reviewed the jurisprudence on the question of what showing must be made by a defendant to support a claim that denial of access to voting lists of prospective jurors constitutes reversible error:
"This issue has recently been before us several times. In the case of State v. Wright, 344 So.2d 1014 (La.1977), the defendant moved before jury selection for a copy of the district attorney's list which indicated how prospective jurors had voted in prior jury trials and the type of case heard by each of the prospective jurors. We assumed without deciding that the lists were the work product of the district attorney's office and held that to discover a work product a litigant must demonstrate that denial of such production would unduly prejudice the preparation of his case or cause him hardship or injustice. We stated that:
"In order to make such a showing . . . he would have been required to demonstrate that he could not practicably obtain information from other sources, and that the state intended to use it in selecting the jury. Had defendant done so, he should have been given the information before voir dire or else allowed to question the prospective jurors on the subject.' 344 So.2d at 1017.
Because defendant made no such showing, however, no reversible error was found in the trial judge's refusal to demand production of the lists.
In State v. Rey, 351 So.2d 489, handed down October 10, 1977, the Court again found no merit in defendant's complaint that he had not been given the lists because:
`In the present case, the record indicates that the prosecutor assembled his information on the voting records of prospective jurors from the records in the office of the clerk of court and that the same records are available to any defense attorney. The defendant has failed to demonstrate the required prejudicial effect of the denial of access.'
Moreover, in State v. Holmes, 347 So.2d 221 (La.1977), this Court found defendant's request for lists premature because voir dire examination had not been conducted and defendant had not shown that he could not get the information by other means (i. e. by questioning jurors on voir dire). And in State v. McGhee, La., 350 So.2d 370, handed down September 19, 1977 the Court found error in the trial judge's refusal to allow counsel to ask prospective jurors on voir dire what the verdict was in previous juries of which they had been a member. The question whether the meritorious assignment standing alone had sufficient merit to warrant reversal was not reached in light of the fact that the conviction was reversed on two other independent grounds.
In the case now before us, we conclude that defendant Singleton has failed to make a showing that he could not gain the information he requested other than by the state's production of the lists in question. None of the prospective jurors were questioned about their past jury service nor criminal records on voir dire examination. Under these circumstances, we find no reversible error in the refusal of the trial judge to order production of the lists. C.Cr.P. art. 921. . . ." 352 So.2d at 193-94.
See also State v. Harvey, 358 So.2d 1224, 1978, where we held that no reversible error was shown by the trial court's denial of defendant's motion for prospective jurors' criminal records, an issue analogous to a request for voting records, because the record did not reflect that defendant was denied the right to question the prospective jurors on the subject.
Defendant alleges that a voting list is not a "work product" because the list does not contain thoughts, strategies or mental impressions but rather raw data from which such conclusions might be drawn. Also he contends that under C.Cr.P. 723, the list would not be a "work product" because it *1287 was prepared for all criminal cases tried during the month, and not just for this case. But see State v. Rey, 351 So.2d 489 (La. 1977). Therefore, he argues, the strict showing required by Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (a "showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice," Id. at 509, 67 S.Ct. at 392, 91 L.Ed, at 461) or by this court in State v. Wright, 344 So.2d 1014 (La.1977), (that she was practicably unable to obtain the information from other sources and the State intended to use the list in selecting the jury) is inapplicable to the case at bar. However, we need not reach this question because, on the record before us, defendant has not shown that the State actually made use of the list during voir dire in selecting the jury. Therefore, there is no indication that the State obtained a nonreciprocal advantage that would be offensive to fundamental fairness, see Wardius v. Oregon, 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82, 87 and n. 6 (1973), or which would warrant reversal of Manchester's conviction.

McGraw's Other Assignments of Error
The remaining assignments of error have no merit.
Nos. 1, 2 and 6: Defendant assigns error to the trial court's failure to order the State to answer certain questions in his motion for bill of particulars, and its failure to require the State to produce certain statements and evidence in response to his prayer for oyer. Due to the deficiencies in the State's responses, he contends that the indictment should have been quashed. Defendant was provided with all the information to which he was entitled when this case was tried; therefore, he was adequately informed of the nature and cause of the accusation against him.
Nos. 3, 4, 5, 14, 18, 19 and 20: Defendant objects to the denial of his motion to suppress evidence seized from the scene of the crime and photographs and to their introduction at trial. The record discloses probable cause to enter McGraw's apartment and make a warrantless arrest. C.Cr.P. 213. The evidence was either properly seized incident to a valid arrest, or in plain view, or as the result of a reasonable search.
Nos. 8 and 26: These assignments were neither briefed nor argued and are therefore deemed abandoned. State v. Jones, 340 So.2d 563 (La.1975).
No. 9: In State v. Hoffman, 345 So.2d 1 (La.1977), we held that jury panels in Orleans Parish must be selected indiscriminately and by lot in open court in accordance with C.Cr.P. 784; however, that decision, having prospective effect only, is not applicable to this case.
No. 10: Defendant assigned error to the excusing of sixty prospective jurors for cause merely on the basis that the juror expressed reservation about imposition of the death penalty. A sentence of death cannot be carried out if the jury that recommended it was chosen by excluding prospective jurors for cause simply because they voiced general objections to the death penalty or expressed conscientious scruples against its infliction. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). As the death penalty imposed on defendant cannot be carried out, Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), the question is moot.
No. 11: Defendant contends the trial court erred in denying his motion for mistrial when it was shown that certain police officers violated the rule of sequestration. C.Cr.P. 764. As there was no showing that the violation worked to materially prejudice the defendant, no mistrial was warranted.
Nos. 25 and 28: There was no error committed by the trial judge in overruling objections to specific portions of the general charge to the jury. Nor was there error in refusing to read defendant's requested special charges. Requested charges Nos. 6, 9, 11, 12, 15, 16, 17 and 18 were *1288 included in the general charge; requested charges Nos. 2, 3, 4, 7, 10, 13 and 14 were either not wholly correct and pertinent in light of the defense offered, or would require qualification, limitation or explanation by the court. See C.Cr.P. 807.
No. 29: The trial judge did not err in overruling the motions for new trial and in arrest of judgment. There clearly was some evidence upon which a verdict of guilty could be based. All other allegations were those previously discussed to which we found no merit.

Motion to Correct Sentence
As defendant correctly urges, the death sentence imposed upon him must be vacated. The mandatory death penalty required by R.S. 14:30, Acts 1973, No. 109, has been declared unconstitutional. Roberts v. Louisiana, supra. Therefore, the case must be remanded for resentencing to the most serious penalty at the time for the next lesser included offense, State v. Jenkins, 340 So.2d 157 (La.1976), that being second degree murder requiring life imprisonment without the benefit of parole, probation or suspension of sentence for a period of twenty years. R.S. 14:30.1, Acts 1973, No. 111, § 1.
For the reasons assigned, the conviction and sentence of Valerie Manchester are reversed. The conviction of Clifford McGraw is affirmed, but the death sentence imposed upon him is annulled and set aside, and the case is remanded for a resentencing to imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years.
TATE, J., concurs in part and dissents in part and assigns reasons.
TATE, Justice, dissenting.
I concur in the reversal of the defendant Manchester's conviction, but I dissent from the affirmance of the defendant McGraw's.
As does the majority, I conclude from my reading of the record that there is substantial evidence supporting McGraw's guilt of this brutal crime. Nevertheless, all defendants, guilty and innocent, are entitled to a fair trial. One of the fair-trial rights of the defendant McGraw is to have his own trial severed from that of a co-defendant with an antagonistic defense to his, by which in effect he must defend not only against the state but also against his co-defendant. La. C.Cr.P. art. 703 (see official revision comment (c); State v. Thibodeaux, 315 So.2d 769 (La.1975).
A substantial violation of this statutory (if not constitutional) right entitles him to a reversal and to a new trial conducted in accordance with law, La.C.Cr.P. art. 921, for the law presumes prejudice when an accused is denied a right designed to protect fair-trial rights of all accuseds.
The circumstances of this trial indicate the prejudice sustained by the accused.
When Miss Manchester took the stand to deny any complicity in the murder (which murder her testimony admitted) her co-defendant McGraw objected to the question and to the testimony, and he moved for a severance and a mistrial as to him. The trial court denied these requests and motions then and throughout Miss Manchester's testimony when he reurged.[1]
McGraw's counsel repeated his motion for mistrial and severance during the closing argument of Miss Manchester's counsel, when the latter repeatedly emphasized his client's guilt and that the brutal murder was committed solely by McGraw without any anticipation or intention by her to participate in a robbery or crime. (Assignment 27) (Counsel argued, for instance: "McGraw condemned Kress to death, killed him brutally. McGraw condemned Janet Kress to a fate perhaps even worse because *1289 he condemned her to a living death. Don't let Clifford McGraw, at your hands, condemn Valerie Manchester to death or to. . ." Objection was then made and overruled, as were the motions.)
The issue thus posed by these assignments is whether under these circumstances the trial court was required to grant McGraw's motion for a severance or a mistrial as to him.
The trial court has large discretion to grant the defendant's motion for severance, when satisfied that justice so requires. La. C.Cr.P. art. 704. A failure to urge the plea timely may waive it, State v. Fytus, 256 La. 962, 240 So.2d 723 (1970), but the motion for severance or mistrial may be made during the trial at the time the prejudice to the mover becomes manifest. State v. Ross, 263 La. 271, 268 So.2d 222 (1972).
The trial court's discretion in denying the defendant's motion for a severance is subject to supreme court review for abuse. State v. Thibodeaux, 315 So.2d 769 (La. 1975). The trial court's ruling is reviewed on the basis of the record or the showing made to the trial court at the time it is urged or re-urged. State v. Progue, 243 La. 337, 144 So.2d 352 (1962).
In State v. Thibodeaux, 315 So.2d 769 (La.1975), this court unanimously held, reconciling conflicting jurisprudence, that a trial court abuses its discretion by failing to grant a severance of the trial of two defendants who have antagonistic defenses.
Thibodeaux concerned two defendants who each sought to put the blame on the other. The present case concerns one defendant attempting to place the entire blame of the crime on her alleged confederate. In my opinion, the co-defendant's defense is no less antagonistic to the prejudiced party than in Thibodeaux and likewise mandates separate trials on the basis of such showing.
In Thibodeaux we noted that, in the circumstance of antagonistic defenses, "a defendant must defend not only against the state, but also against his co-defendant" [must "stand trial before two accusers, the state" and his co-defendant]. "In such an instance, justice would require a severance." 315 So.2d 771.
Accordingly, the denial of severance on McGraw's motion prejudicially denied him a fair trial, and his conviction should be reversed.
I respectfully dissent.

On Rehearing
TATE, Justice.[*]
On original hearing, we reversed the defendant Manchester's conviction. Applying statutory provisions and well-settled jurisprudence, we held that, in offering the defendant's inculpatory statement for impeachment purposes, the state had (over objection) failed to establish that the statement was given freely and voluntarily, a required predicate before the confession can be introduced for jury consideration.
The state applied for rehearing. We granted its application, primarily to consider its suggestion that, before reversing, the defendant Manchester's case should be remanded to the district court for a determination of whether the confession was in fact voluntary. This has been done in other instances when an inadequate predicate for a confession or inculpatory statement had been established in the case under review. See State v. Scott, 355 So.2d 231 (La.1978) and State v. Hills, 354 So.2d 186 (La.1978).
We are unable to do so here, because the present trial error deprived the defendant of her right to have the trial jury evaluate the weight and credibility of the testimony concerning her inculpatory statements, in the light of the circumstance under which they were obtained. (Here, in fact, the inculpatory statement had been suppressed in pre-trial proceedings as inadmissible, because taken in violation of the accused's Miranda rights).
*1290 Scott and Hills, the cited decisions, concerned instances where, with regard to the non-jury hearing before the judge, the reviewing court felt that the admissibility of the confession had not been sufficiently established, due to ambiguities in the evidence. In such an instance, where the hearing on remand before the judge (the sole trier as to admissibility) will establish that the confession was indeed admissible, the defendant's conviction by the jury based upon such confession was not reversible: The defendant was not prejudiced by the initial determination by the judge in the non-jury hearing that the confession was admissible, even though the initial determination was based upon what the reviewing court felt to be be an insufficient basis.
In the present instance, however, the defendant was deprived of her statutory right to have the jury determine the weight or truth of the confession, as is required by law.
The predicate of voluntariness before the judge (alone) establishes only the admissibility of the confession for introduction into evidence before the jury. However, the state is further required, before introducing the confession at the trial, to establish the predicate of voluntariness before the jury in order to enable the jury, as trier of fact, to determine what weight to give to the confession or inculpatory statement. La.R.S. 15:451; State v. Lovett, 354 So.2d 1139 (La. 1977); Pugh, Louisiana Evidence Law 279-89 (1974). Cf. La.C.Cr.P. art. 703(B) (1975).
"Only such circumstances surrounding the making of the confession as are relevant to the issue of voluntariness should be considered by the judge in this [initial non-jury admissibility] hearing. All other questions, including whether or not the confession was in fact made, must be left entirely to the jury." Pugh, Louisiana Evidence Law 279 at 287 (1974).
Thus, on a remand the state might indeed establish the required predicate of voluntariness for admissibility of the confession. Nevertheless, the remand would not cure the prejudice at the trial caused here, where the defendant Manchester was deprived of her right to have the entire circumstances surrounding the confession proven by the state prior to its introduction of the confession, as required by our statutes and jurisprudence. The purpose of this requirement is to enable the trial jury, in the light of these circumstances, to determine what weight, if any, should be given to the inculpatory statements or confession.
The state finally urges that the error was harmless.
The defendant Manchester took the stand to deny that she had any prior knowledge that her male companion intended to rob or kill the young couple when he invited them to his apartment. Over the defendant's objection that no predicate had been laid for this impeaching testimony, a police officer was permitted to testify that she had confessed that she and her companion had intended to rob the couple, and that she herself had cut the woman victim with a knife. (As we correctly held on original hearing, the trial court erred in overruling this objection and in not requiring the state to prove the predicate required by law before it introduced this inculpatory statement.)
The defendant's inculpatory statement, if true, corroborated the testimony of the surviving woman victim and indicated to be false the accused's only defense, the defendant's own testimony at the trial denying her foreknowledge of her companion's intended crime or any participation by her in it.
The erroneous admission of the inculpatory statement, in substantial violation of the defendant's statutory right, was obviously prejudicial to the substantial rights of the accused. It cannot be considered as harmless error. Cf. La.C.Cr.P. art. 921.

Decree
Accordingly, we reinstate our original decree, which reversed the defendant Manchester's conviction, and we remand her case for a new trial in accordance with law.
ORIGINAL DECREE REINSTATED ON REHEARING.
SUMMERS, C. J., and MARCUS, J., dissent.
NOTES
[1] Assignment No. 23 was taken when Valerie Manchester took the stand, admitted the robbery and murder, and denied her complicity in it. Assignment No. 24 relates to defendant's objections when the State put on a rebuttal witness for the purposes of impeaching Ms. Manchester who testified about an uncounselled alleged inculpatory statement by Ms. Manchester. Assignment No. 27 was taken to Ms. Manchester's counsel's closing arguments informing the jury that the evidence was overwhelming that the murder was committed solely by defendant without any anticipation or intention by Manchester to participate in any crime.
[2] State v. Marchant, 25 U.S. 480, 12 Wheat. 480, 6 L.Ed. 700 (1827); State v. Lee, 46 La. Ann. 623, 15 So. 159 (1894); State v. Cazeau, 8 La.Ann. 109 (1853); State v. Leonard, 6 La. Ann. 420 (1851).
[3] See, e. g., State v. Finley, 341 So.2d 1381 (La.1976); State v. Jenkins, 340 So.2d 157 (La. 1976); State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971); State v. Labat, 226 La. 201, 75 So.2d 333 (1954); State v. Cook, 215 La. 163, 39 So.2d 898 (1949); State v. Livsey, 190 La. 474, 182 So. 576 (1938); State v. Cately, 52 La.Ann. 574, 26 So. 1004 (1899); State v. Gournet, 43 La.Ann. 197, 9 So. 436 (1891).
[4] That same conclusion would now be mandated after the United States Supreme Court case of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In Bruton the court found deficient the procedure of the trial judge instructing the jury not to consider the confession of a co-defendant when deciding the guilt or innocence of the other defendant, and held that statements made by one defendant inculpating the other cannot be admitted at trial. To avoid the constitutional problem raised by Bruton, the inculpatory statements of a codefendant are often edited to delete reference to the other defendant. See State v. Jenkins, 340 So.2d 157 (La.1976); State v. Kaufman, 278 So.2d 86 (La. 1973).
[5] See Annotations in 54 A.L.R.2d 830, 858-60; 131 A.L.R. 917, 922-23; 104 A.L.R. 1519, 1522; 70 A.L.R. 1171, 1184-85 for cases in other jurisdictions applying the antagonistic defenses doctrine.
[6] A conflicting line of jurisprudence held that the mere fact that one defendant seeks to escape conviction by throwing the blame upon the other is not sufficient to require a severance. State v. Williams, 250 La. 64, 250 So.2d 787 (1967); State v. Goury, 184 La. 955, 168 So. 113 (1936); State v. Duplechain, 136 La. 389, 67 So. 175 (1915); State v. Johnson, 116 La. 856, 41 So. 117 (1906). But see State v. Thibodeaux, supra, where we held that the better view is that where each defendant attempts to put the blame on the other, an appropriate occasion for severance is presented.
[1] The denial of these motions was the basis of Assignment 23. Similar motions were made when, on rebuttal, the state introduced into evidence an uncounselled alleged inculpatory statement by Miss Manchester. Assignment 24. We need not discuss the lurking Bruton issue (as to McGraw) raised by this alleged statement, by which, Miss Manchester was supposed to have stated that "she" intended to rob the Kress couple as soon as she saw them.
[*] Chief Judge L. Julian Samuel participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.