Richard TRASS, Petitioner-Appellant,

v.

Ross MAGGIO, Warden, Louisiana State Penitentiary, and Attorney General William J. Guste, Jr., State of Louisiana, Respondents-Appellees.

No. 83–3419.

United States Court of Appeals, Fifth Circuit.

May 7, 1984.

Lila T. Hogan, Hammond, La., for petitioner-appellant.

John H. Craft, Susan Scott Hunt, Asst. Dist. Attys., New Orleans, La., for respondents-appellees.

Before GEE, RANDALL and JOHNSON, Circuit Judges.

GEE, Circuit Judge:

Petitioner Richard Trass appeals from the district court's denial of his petition for habeas corpus relief. Trass was jointly indicted with Charles Tolliver in Louisiana state court for the murder of Allen Johnson. Trass and Tolliver were found guilty as charged in a joint trial and were sentenced to life imprisonment. Trass now contends that he was denied effective assistance of counsel in violation of his rights under the sixth and fourteenth amendments in that his counsel failed to move for a severance during or prior to trial, failed adequately to prepare his case, and failed effectively to utilize pretrial motions. For the reasons set out below, we reverse the decision of the district court and order that the writ be granted.

### Background

Trass and co-defendant Tolliver were indicted in December 1974. Trass's family retained Lyall Shiell, a New Orleans attorney, to represent Trass; Tolliver was represented by Robert Zibilich. In a joint trial, both defendants were convicted. The Louisiana Supreme Court affirmed Trass's conviction on appeal, *State v. Trass*, 347 So.2d 1156 (La.1977). After exhausting his state court remedies, Trass filed a habeas petition in federal court. The district court denied this application for habeas relief, applying the heightened standards of performance for retained counsel subsequently overruled by the Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). We reversed and remanded for an evidentiary hearing and reconsideration under the "reasonably effective assistance of counsel" standard uniformly applied to both retained and appointed counsel in *Cuyler*.

On remand an evidentiary hearing was held before United States Magistrate Livaudais in September and October of 1982. Based on the evidence presented in the hearing and contained in the record and on the applicable law, Magistrate Livaudais found that petitioner's claim of ineffective assistance of counsel was valid insofar as it was based on counsel's failure to move for severance during trial and the resulting prejudice, and recommended granting the writ. The district court rejected the magistrate's recommendation and denied the writ in June 1983. Petitioner appeals from that denial, raising as instances of ineffective-

ness not only counsel's failure to move for severance, but also the other grounds urged to Magistrate Livaudais—counsel's lack of preparation and failure to effectively utilize pretrial motions.

Our review of the record indicates a disturbing disregard on Shiell's part for his responsibilities to a client charged with murder in a joint indictment. Early in the course of preparation for trial, Shiell and Zibilich reached an agreement that neither defendant would present evidence but would merely rest on his respective presumption of innocence.[1] Having made this decision, Shiell appears to have abdicated his role in the trial, allowing Zibilich to determine the course of events.

The description of Shiell's preparation for trial is a long list of actions not taken. Trass has consistently maintained that despite his repeated efforts to contact Shiell (attempts corroborated by other witnesses) and to inform him of specific alibi witnesses (corroborated by these witnesses), Shiell did not consult with him at any time in preparing his defense. Shiell states that he is "sure he consulted with petitioner" but he fails to recall any specific dates or to produce any documentation of any consultations. Shiell admits he interviewed none of petitioner's potential witnesses and subpoenaed no witnesses on petitioner's behalf. Because Trass is "retarded," Shiell never considered putting him on the stand, but neither did he have Trass tested to determine if he was legally incapable of forming criminal intent or standing trial. He did not interview the co-defendant, Tolliver, nor did he interview any of co-defendant's witnesses, even though seven were subpoenaed before trial.

Shiell's use of pre-trial motions was similarly minimal. He filed no pre-trial motion on Trass's behalf, simply joining in the pre-trial motions filed on behalf of Tolliver by Zibilich: motions to suppress identification, confession and evidence. Shiell and

Zibilich subsequently withdrew all pre-trial motions except the Prayer for Oyer, which requested both written and verbal statements. Shiell did not interview the state's witnesses, even though they were identified in the Prayer for Oyer, nor did he attempt to develop any impeaching evidence. When, on the day of trial, the state presented Shiell with the notice required by Section 768 of the Louisiana Code of Criminal Procedure [2] (a "768 notice") of intent to use an inculpatory statement by Trass, Shiell did not move to suppress this statement even though the 768 notice directly conflicted with the answer to the Prayer for Oyer which disclosed no such inculpatory statements obtained by law enforcement officials. This statement was the only incriminating evidence presented by the state against Trass.

Shiell remembers nothing that he did in preparation for Trass's defense other than talk to co-defendant's counsel on whom, he admits, he completely relied. This resignation of his own responsibility proved costly to his client at trial. The state presented two witnesses to the crime: Johnson's eight-year-old sister, who identified Tolliver as the gunman and stated that she had seen Trass with Tolliver earlier in the day, and Delores Joseph, a former friend of Tolliver's who testified that Trass, Tolliver, Teresa Lewis and herself had been in Lewis' apartment immediately before the shooting, that she had overheard Trass and Tolliver discussing killing "a man" (the inculpatory statement identified in the 768 notice), and that she and Trass watched from the window of Lewis' apartment as Tolliver shot Johnson. Joseph did not inform the police of what she knew until three months after the murder—after she had stopped keeping company with Tolliver.

█ Pursuant to his agreement with Zibilich, Shiell rested Trass's case solely on the presumption of innocence. Zibilich

---

**1.** The ensuing description of Shiell's actions in preparing for trial and his justifications for them is based on testimony of Shiell and others at the evidentiary hearing before Magistrate Livaudais.

**2.** La.Code Crim.Proc. § 768 (West Supp.1984).

then mounted Tolliver's defense: that Trass committed the crime alone. Zibilich put on two witnesses in support of this defense: Teresa Lewis and Tolliver himself. Teresa Lewis testified that on the evening of the shooting she found Trass sitting in a chair in her bedroom repeating to himself, "Die, nigger, die, yeah, nigger, you got to die. Nigger, you are dead," and playing with a pistol and some bullets. Lewis phoned her friend Tolliver to come get Trass out of her apartment. Immediately after making the call she went downstairs and saw Johnson lying on the ground across the street with bystanders gathered around. According to Lewis, Tolliver then came over and Trass left in a cab; Tolliver stayed with Delores Joseph in Lewis' apartment for some time.

Tolliver corroborated Lewis' testimony: he stated that in response to her call he came over to her apartment on the evening of the shooting and found Trass there looking out the window at a man lying in the street and repeating phrases similar to those repeated by Lewis. He saw no gun, however.

All hands concede that Tolliver's defense devastated Trass's case.[3] Without a doubt, it put Trass in the position of having to defend himself against both the state and his co-defendant; a severance motion was indicated. But Shiell did not move for severance at trial—nor did he move for a mistrial, or even a continuance or recess.[4] He made no timely attempt to salvage Trass's defense from what he later termed "a double cross" by Zibilich. After trial, Shiell moved for a new and separate trial for Trass which was denied by the Louisiana Supreme Court as untimely, *State v. Trass*, 347 So.2d at 1158–59.

Shiell's grave lapse in failing to move for severance appears to have been due to an erroneous understanding of the law of severance, rather than to any conceivable "strategic choice." In his motion for a new trial, Shiell acknowledged that the antagonistic defenses demanded a severance motion on his part:

> Counsel for mover and counsel for co-defendant had previously discussed this matter and counsel for Richard Trass was assured that there was no conflict in the defen[dants'] two defen[ses], therefore Richard Trass's attorney did not move for severance. After the State had rested and Richard Trass had rested, the co-defendant put on two witnesses tending to show that Richard Trass and only Richard Trass was the murderer. Had counsel for Richard Trass known this, he would properly have moved for a severance.

At the subsequent evidentiary hearing on his alleged ineffectiveness, Shiell testified that he would have sought a severance had he known that Tolliver was going to "put on a defense trying to put everything on Richard [Trass]." However, he also stated that he believed a severance motion was not possible during trial.

> Q. When Tolliver presented his defense, why didn't you move for a mistrial at that point, or severance?
> A. There was no legal basis to move for a mistrial.
> Q. Or a severance?
> A. Not at that point, no, no.

And on redirect:

> Q. Did you even think about doing a continuance or a recess to regroup and talk to your client and possibly ask the court to allow you to present witnesses to rebut the testimony?
> A. No.
> Q. Why not?
> A. Again, we had prepared our defense on the basis that there would be no defense, that we would rely on the cross-examination, and at the eleventh hour, so to speak, it would be impossible to start preparing a defense.

---

**3.** Shiell and Zibilich so conceded at the evidentiary hearing. The state admitted the prejudice of Tolliver's witnesses in its "Proposed Findings and Recommendations" submitted to Magistrate Livaudais after the evidentiary hearing: "... Mr. Shiell made a tactical decision which but for the perfidy of co-defendant's counsel might well have led to an acquittal for his client."

**4.** Shiell's testimony as to why he did not move for a continuance reveals just how damaging his complete lack of preparation was:

Q. Were you aware that during the trial you could have moved for a mistrial or severance at that point?

A. I was not aware of it, and I'm not aware of it today, and I do not believe that by law that could have been done. Certainly not then.

Shiell is, of course, in error. Under Louisiana law, a severance motion is proper before or during trial,[5] but if not made before the trial's end will be rejected as untimely.[6]

### Ineffective Assistance under *Strickland*

Petitioner contends that Shiell's failure timely to move for a severance or mistrial, his failure to take any specific action in preparation for trial other than to discuss the case with counsel for co-defendant, and his minimal use of and inadequate response to pretrial motions—particularly his failure to respond to the state's warning that an inculpatory statement would be used at trial in contradiction of the answer to the Prayer for Oyer—violated his right to effective assistance of counsel guaranteed by the sixth and fourteenth amendments. Because we conclude that, taken alone, Shiell's failure to move for a severance at trial constituted such ineffective assistance as to entitle Trass to a new trial, we do not reach the issue of whether his preparation or use of pretrial motions, taken separately or together, also rendered his representation constitutionally defective.

■ In reviewing a claim of ineffective assistance of counsel, a mixed question of fact and law,[7] this Court must make an independent evaluation of whether counsel's representation passed constitutional muster.[8] This Circuit's oft-repeated standard of constitutionally effective assistance of counsel is "not errorless counsel, but counsel reasonably likely to render and rendering reasonably effective assistance,"

*Vela v. Estelle*, 708 F.2d 954, 961 (5th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 736, 79 L.Ed.2d 195 (1983). A petitioner seeking to overturn his conviction on the grounds of ineffective assistance must demonstrate by a preponderance of the evidence that he was deprived of constitutionally effective assistance. *E.g., Washington v. Strickland*, 693 F.2d 1243, 1250 (5th Cir.1982) (en banc), *cert. granted*, —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). In *Strickland* we established the precise burdens of proof on petitioner and on the state in this Circuit: petitioner has the burden of persuasion to show, first, that counsel was ineffective and, second, that the ineffective assistance "worked to his actual and substantial disadvantage," *Strickland*, 693 F.2d at 1258, *quoting United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

■ *Strickland* definitively rejected as "inequitable" the burden placed on the petitioner by a plurality of the D.C. Circuit in *United States v. Decoster*, 624 F.2d 196, 208, 211–12 (D.C.Cir.1979) (en banc): to show that the outcome of the case would have been different but for the ineffective assistance. *Strickland*, 693 F.2d at 1261–62. Rather, *Strickland* "reserves for the state the ultimate burden of showing that any constitutional error that did occur was harmless beyond a reasonable doubt,"—by "show[ing] in the context of all the evidence that it remains certain beyond a reasonable doubt that the outcome of the proceedings would not have been altered but for the ineffectiveness of counsel." 693 F.2d at 1262, see also *id.* at 1258 ("if [petitioner] successfully satisfies [his] ... burden, the writ must be granted unless the state proves that counsel's ineffectiveness was harmless beyond a reasonable doubt").

---

5. *See, e.g., State v. McGraw*, 366 So.2d 1278, 1282–83 n. 1 (La.1978) (motions to sever made during trial as defense developed in antagonistic fashion).

6. *See, e.g., State v. Trass*, 347 So.2d at 1159.

7. *E.g., Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir.1983).

8. Of course, in making that evaluation we are to consider the district court's "basic, historical findings of fact made after an evidentiary hearing" and accept these unless they are clearly erroneous. *Armstead*, 720 F.2d at 896; *see also Vela v. Estelle*, 708 F.2d 954 at 961 n. 7 (5th Cir.1983).

Contrary to the principles laid down as the rule of this Circuit in *Strickland*, the district court's holding places on petitioner the ultimate burden of proving that the outcome of the case would have been different but for the ineffective assistance of counsel. The district court held that even if Trass had shown ineffective assistance—a question which it did not reach—he "ha[d] not met his burden of showing an actual adverse impact on the fairness of his trial resulting from that failure," [9] because, the district court reasoned, had a motion for severance been made and denied, in order to prevail on appeal and obtain a reversal of his conviction, Trass would be required by Louisiana law to show that he "would probably not have been convicted if the severance had been granted," *citing State v. McGraw*, 366 So.2d 1278 (La.1978).

This reasoning lets the "outcome-determinative" test in the back door. Under the district court's allotment of the burdens of proof, the only way Trass could have demonstrated the violation of his right to effective counsel would have been to show he would probably not have been convicted in a separate trial—i.e. the ultimate outcome of his trial would have been different but for counsel's ineffectiveness. *Strickland* establishes that the federal courts may not make such an "inequitable" demand on habeas petitioners.

Moreover, the district court's focus on what might have happened at the state appellate level should a motion to sever have been denied by the trial court is, in itself, in conflict with *Strickland*—regardless of what the specific test for appellate reversal imposed by state law might be. Had the state demonstrated that denials of

motions to sever are *never* reversed on appeal in Louisiana, such a showing would not have met the state's burden under *Strickland* to show harmless error beyond a reasonable doubt. Rather, for a federal court reviewing a claim of ineffective assistance, the question on which the state must prevail beyond a reasonable doubt is: What would the trial court have done? In this case: Would the trial court have granted severance? For federal courts to review ineffective assistance claims from the perspective of the state appellate court, as the district court erroneously did in this case, would be for them to incorporate into federal habeas law the deference of the state appellate courts to their brethren at the trial level—a concern inappropriate to adjudication of a federal habeas claim.

### *Strickland* Applied to the Record in this Case

■ We conclude that Trass has met his burden under *Strickland* with regard to Shiell's failure to move for a severance at trial. Occasioned as it was by Shiell's ignorance of the applicable law, this omission constituted an identifiable lapse in constitutionally adequate representation. *See Vela v. Estelle*, 708 F.2d at 963–64 (errors that indicated ignorance of basic Texas procedure constituted ineffective assistance); *Kennedy v. Maggio*, 725 F.2d 269, 272–73 (5th Cir.1984) (to be effective counsel must be familiar with current state law on significant points of relevance). Moreover, we conclude without difficulty that counsel's failure to move for a severance in the face of Tolliver's accusation of Trass "resulted in actual and substantial disadvantage to the cause of (Trass's) defense." *Strickland*, 693 F.2d at 1262. Under Louisiana

---

9. Although the district court's decision was handed down some six months after *Strickland*, the formulation of the ineffectiveness assistance standard it reiterated was that of *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir.), *cert. denied*, 459 U.S. 968, 103 S.Ct. 295, 74 L.Ed.2d 278 (1982): petitioner must show "an identifiable lapse on the part of counsel and an actual adverse impact on the fairness of his trial." We have no quarrel with the definition of petitioner's burden in *Daniels*: indeed, as opinions subsequent to *Strickland* have indicated, the *Dan-*

*iels* language embodies the same test as that stated in the later en banc opinion. *See, e.g., Taylor v. Maggio*, 727 F.2d 341 at 348–349 (5th Cir.1984) (string citing *Daniels* and *Strickland* in stating petitioner's burden). However, as discussed *infra*, we find that the district court misconceived the precise nature of petitioner's burden to show "actual adverse impact," wrongly construing it to require petitioner to show that the final outcome was determined by counsel's lapse.

law, antagonistic defenses warrant a severed trial when it appears "that one defendant intend[s] to place sole blame for the offense on his co-defendant," *State v. McGraw*, 366 So.2d at 1285. *McGraw* cites *State v. Thibodeaux*, 315 So.2d 769 (La. 1975), as an example of the "better rule," *McGraw*, 366 So.2d at 1285, n. 6, that when one defendant has to defend himself against both the state and his co-defendant, the interests of justice require severance.[10] This was Trass's situation; severance was warranted.[11]

Moreover, we find that the state has failed to show that this egregious and prejudicial lapse on Shiell's part was harmless error. Forcing Trass to stand trial jointly with Tolliver "required him, in effect, to stand trial before two accusers, the state and [his co-defendant]," *Thibodeaux*, 315 So.2d at 771. As we have noted, Louisiana considers that, far from being harmless, this situation is so unjust as to warrant severance.

We hold that Shiell's failure to move for severance deprived Trass of his constitutional right to effective assistance of counsel. Accordingly, we reverse the judgment of the district court and remand with instructions to grant the writ of habeas corpus unless the state elects within a reasonable time to try Trass alone.

REVERSED and REMANDED.

---

**10.** As noted in *Thibodeaux*, the Louisiana standard for severance on the grounds of "antagonistic defenses" is easier to satisfy than the "mutually exclusive" standard adopted by the federal courts. *See Thibodeaux*, 355 So.2d at 771, n. 4.

**11.** We recognize that the trial court's decision to grant a severance is technically a matter of discretion. However, given the facts of this case, we are persuaded that the trial court's consideration of the Louisiana law on severance and of the overarching constitutional requirement that severed trials be conducted where a joint trial would deprive a defendant of the fair trial to which the sixth amendment entitles him would have resulted in the grant of the severance motion timely made.